# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER WILEY,

        Defendant-Appellant.

FOR PUBLICATION
May 4, 2018
9:00 a.m.

No.  336898
Wayne Circuit Court
LC No.  95-002388-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM LAWRENCE RUCKER,

        Defendant-Appellant.

No.  338870
Wayne Circuit Court
LC No.  92-014245-01-FC

Before:  BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

BECKERING, J.

These appeals arise in the aftermath of the United States Supreme Court's proclamation that mandatory life-without-parole sentencing schemes are unconstitutional with respect to juvenile offenders and the Michigan's Legislature's enactment of MCL 769.25a in an attempt to retroactively rectify the problem.  In Docket No. 336898, defendant Christopher Wiley appeals by right the trial court's order resentencing him to 25 to 60 years' imprisonment for his 1995 conviction of first-degree murder, MCL 750.316, under MCL 769.25a.  In Docket No. 338870, defendant William Lawrence Rucker appeals by right the trial court's order resentencing him to 30 to 60 years' imprisonment for his 1993 conviction of first-degree murder, MCL 750.316,

-1-

under MCL 769.25a.[1] Both defendants allege on appeal that MCL 769.25a(6) unconstitutionally deprives them of the application of earned disciplinary credits to their term-of-years sentences. These appeals were consolidated by order of this Court.[2]

We affirm the sentences defendants received at the time of their resentencing, but we agree with their contention that MCL 769.25a(6) is unconstitutional. Put simply, we agree with our federal colleague Judge Mark A. Goldsmith's analysis in *Hill v Snyder*, opinion and order of the United States District Court for the Eastern District of Michigan, issued April 9, 2018 (Case No. 10-cv-14568), wherein he concluded that MCL 769.25a(6) runs afoul of ex post facto laws.

## I. RELEVANT LEGAL HISTORY

As alluded to above, these appeals arise following the United States Supreme Court's decisions in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012) and *Montgomery v Louisiana*, ___ US ___; 136 S Ct 718; 193 L Ed 2d 599 (2016), and our Legislature's concomitant enactment of MCL 769.25a.

The *Miller* Court found, in relevant part:

[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory-sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment. [*Miller*, 567 US at 489.]

Subsequently, the Supreme Court recognized that the ruling in *Miller* had resulted in some confusion and disagreement among various state courts about whether *Miller* applied retroactively. *Montgomery*, 136 S Ct at 725. In determining that *Miller* was to be afforded retroactive application, the Court explained:

*Miller's* conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in violation of the Constitution.

Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received

---

[1] Both Wiley and Rucker were also convicted of possession of a firearm in the commission of a felony (felony-firearm), MCL 750.227b. Their sentences for those convictions were not altered on resentencing, have been served, and are not relevant to the issues presented in these appeals.

[2] See *People v Wiley*, *People v Rucker*, unpublished order of the Michigan Court of Appeals, issued January 17, 2018 (Docket Nos. 336898, 338870).

mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller's* central intuition—that children who commit even heinous crimes are capable of change. [*Montgomery*, 136 S Ct at 736 (citations omitted).]

After *Miller* but before *Montgomery*, our Legislature enacted MCL 769.25, which set forth the procedure for resentencing criminal defendants who fit *Miller*'s criteria, provided either that their case was still pending in the trial court or that the applicable time periods for appellate review had not elapsed. In other words, MCL 769.25 applied only to cases that were not yet final, and did not retroactively apply *Miller* to cases that were final. See 2014 PA 22, effective March 4, 2014.

However, in anticipation of the possibility that *Miller* might be determined to apply retroactively, our Legislature simultaneously enacted MCL 769.25a, which set forth the procedure, in that event, for the resentencing of defendants who fit *Miller*'s criteria, even if their cases were final. See 2014 PA 22, effective March 4, 2014. In other words, if *Miller* were determined to apply retroactively, MCL 769.25a would apply it retroactively both to cases that were final and to those that were not final. MCL 769.25a states:

(1) Except as otherwise provided in subsections (2) and (3), the procedures set forth in section 25 of this chapter do not apply to any case that is final for purposes of appeal on or before June 24, 2012.[3] A case is final for purposes of appeal under this section if any of the following apply:

(a) The time for filing an appeal in the state court of appeals has expired.

(b) The application for leave to appeal is filed in the state supreme court and is denied or a timely filed motion for rehearing is denied.

(c) If the state supreme court has granted leave to appeal, after the court renders its decision or after a timely filed motion for rehearing is denied.

(2) If the state supreme court or the United States supreme court finds that the decision of the United States supreme court in *Miller v Alabama*, 576 [sic] US

---

[3] *Miller* was decided on June 25, 2012.

___; 183 L Ed 2d 407; 132 S Ct 2455 (2012), applies retroactively to all defendants who were under the age of 18 at the time of their crimes, and that decision is final for appellate purposes, the determination of whether a sentence of imprisonment for a violation set forth in section 25(2) of this chapter shall be imprisonment for life without parole eligibility or a term of years as set forth in section 25(9) of this chapter shall be made by the sentencing judge or his or her successor as provided in this section. For purposes of this subsection, a decision of the state supreme court is final when either the United States supreme court denies a petition for certiorari challenging the decision or the time for filing that petition passes without a petition being filed.

(3) If the state supreme court or the United States supreme court finds that the decision of the United States supreme court in *Miller v Alabama*, 576 [sic] US ___; 183 L Ed 2d 407; 132 S Ct 2455 (2012), applies retroactively to all defendants who were convicted of felony murder under section 316(1)(b) of the Michigan penal code, 1931 PA 328, MCL 750.316, and who were under the age of 18 at the time of their crimes, and that the decision is final for appellate purposes, the determination of whether a sentence of imprisonment shall be imprisonment for life without parole eligibility or a term of years as set forth in section 25(9) of this chapter shall be made by the sentencing judge or his or her successor as provided in this section. For purposes of this subsection, a decision of the state supreme court is final when either the United States supreme court denies a petition for certiorari challenging the decision with regard to the retroactive application of *Miller v Alabama*, 576 [sic] US ___; 183 L Ed 2d 407; 132 S Ct 2455 (2012), to defendants who committed felony murder and who were under the age of 18 at the time of their crimes, or when the time for filing that petition passes without a petition being filed.

(4) The following procedures apply to cases described in subsections (2) and (3):

(a) Within 30 days after the date the supreme court's decision becomes final, the prosecuting attorney shall provide a list of names to the chief circuit judge of that county of all defendants who are subject to the jurisdiction of that court and who must be resentenced under that decision.

(b) Within 180 days after the date the supreme court's decision becomes final, the prosecuting attorney shall file motions for resentencing in all cases in which the prosecuting attorney will be requesting the court to impose a sentence of imprisonment for life without the possibility of parole. A hearing on the motion shall be conducted as provided in section 25 of this chapter.

(c) If the prosecuting attorney does not file a motion under subdivision (b), the court shall sentence the individual to a term of imprisonment for which the maximum term shall be 60 years and the minimum term shall be not less than 25 years or more than 40 years. Each victim shall be afforded the right under section 15 of the William Van Regenmorter crime victim's rights act, 1985 PA 87,

MCL 780.765, to appear before the court and make an oral impact statement at any resentencing of the defendant under this subdivision.

(5) Resentencing hearings under subsection (4) shall be held in the following order of priority:

(a) Cases involving defendants who have served 20 or more years of imprisonment shall be held first.

(b) Cases in which the prosecuting attorney has filed a motion requesting a sentence of imprisonment for life without the possibility of parole shall be held after cases described in subdivision (a) are held.

(c) Cases other than those described in subdivisions (a) and (b) shall be held after the cases described in subdivisions (a) and (b) are held.

(6) A defendant who is resentenced under subsection (4) shall be given credit for time already served, but shall not receive any good time credits, special good time credits, disciplinary credits, or any other credits that reduce the defendant's minimum or maximum sentence.

The instant appeals challenge MCL 769.25a(6)'s proscription against the inclusion of good time and disciplinary credits when resentencing juvenile offenders to sentences in which they are eligible for parole, in addition to raising other constitutional challenges.

## II. FACTUAL AND PROCEDURAL HISTORIES

### A. DOCKET NO. 336898 – DEFENDANT WILEY

The events leading to Wiley's conviction of first-degree murder involved the death of Jamal Cargill on June 22, 1994, and were described by this Court as follows:

> Defendant entered the backyard of a home where several people, including the victim, were playing basketball. Defendant, who had a gun concealed on his person, asked who had been messing with his car. No one threatened defendant or tried to hurt him. Defendant twice asked the victim why he was smiling, and placed his hand on the gun. The victim told defendant that he was not scared, but did not rush defendant and made no motions toward him. Defendant pulled out the gun, cocked it, and pointed at the victim's chest area. Defendant then fired seven to eight shots at the victim. After the victim fell, defendant ran away but then came back when the victim began to get up. Defendant then fired two more shots at the victim. [*People v Wiley*, unpublished per curiam opinion of the Court of Appeals, issued November 21, 1997 (Docket No. 193252).]

At the time of the commission of this crime, Wiley was 16 years and 9 months old. Wiley was convicted by a jury on August 30, 1995, of first-degree murder, MCL 750.316, and felony-firearm, MCL 750.227b, and was originally sentenced on December 19, 1995 to life in prison

without parole for his first-degree murder conviction and two years' imprisonment for his felony-firearm conviction.

After the issuance of *Miller* and *Montgomery*, and the enactment of MCL 769.25a, the Wayne County Prosecutor's Office prepared a sentencing memorandum indicating that it would not seek to resentence Wiley to life in prison without parole, but would instead seek to have Wiley resentenced on his first-degree murder conviction to a term of imprisonment "for which the maximum term shall be 60 years and the minimum term shall not be less than 25 years or more than 40 years," in accordance with MCL 769.25a(4)(c). While numerous prison misconducts were documented for Wiley following his incarceration in 1996 and until 2008, the prosecutor's office noted that, while in prison, Wiley completed his general equivalency diploma (GED), enrolled in several community college courses, and had maintained employment in the prison in various capacities since 1999. The prosecution requested that the trial court resentence Wiley to a term of 35 to 60 years' imprisonment for his first-degree murder conviction.

Wiley's resentencing hearing was held on December 21, 2016. After a statement from the victim's family and Wiley's allocution, the trial court reviewed the history of the case and sentencing as well as Wiley's record while in prison and his achievements. The trial court sentenced Wiley as follows:

> I think it was a horrific crime, and I certainly hope that you don't ever forget about what you've done, and before there's any confrontational situation again, you think about what happened the last time you didn't think, 'cuz I think you really went looking for trouble.

> But I am going to, I think there is sufficient time for completion of programming within the 25 years and a review at that point by the Parole Board for determining whether or not he has met the standards that they feel are adequate for parole, and they've got the ability to keep him up to 60 years, so the sentence will be 25 to 60 years on the first[-]degree murder with credit for 7,441 days served, consecutive to the felony firearm which he will get credit for 700, the 2 years on the felony firearm, and be given credit for the 730 days served.

> I know that that may not be satisfactory to the Cargill family, but there is nothing that this court can do to restore the life of your brother, son, or friend, and I'm, I think we're looking at a situation in all of these cases where it's not just one family but multiple families and multiple people whose lives are destroyed by the senselessness of these actions.

> I only hope that with the sentence that you will continue to grow and that you will, if paroled, become a productive member of society.

A judgment of resentencing was entered on December 21, 2016. Wiley appealed, contending that MCL 769.25a(6), which deprives him of sentencing credits on his term-of-years sentence, violates the Ex Post Facto Clause of both the Michigan and United States Constitutions, US Const art I, § 10, Const 1963, art 1, § 10. He also contends that the statute violates Const 1963,

art 2, § 9 because it repealed "Proposal B" concerning parole eligibility, and Const 1963, art 4, § 24, because it violates the Title-Object Clause.

## B. DOCKET NO. 338870 – DEFENDANT RUCKER

The events leading to Rucker's conviction of first-degree murder involved the death of Earl Cole on November 27, 1992, and were described by this Court as follows:

> There was evidence of animosity between defendant and the decedent because of defendant's replacement by the decedent as the drug seller at the Tireman address. Further, defendant brought a shotgun to the Tireman address and talked the decedent into leaving the home with him. Later, a neighbor heard someone say, "Please don't shoot me," just prior to shots being fired. The decedent was found dead from five gunshot wounds, which were inflicted from a gun that had to be reloaded each time it was fired. Finally, defendant told various stories to different people regarding what had happened. [*People v Rucker*, unpublished memorandum opinion of the Court of Appeals, issued December 29, 1994 (Docket No. 167012).]

At the time of the commission of this crime, Rucker was 17 years and 3 months old. Rucker was convicted by a jury on May 20, 1993, of first-degree murder, MCL 750.316, and felony-firearm, MCL 750.227b, and was originally sentenced on June 8, 1993, to life in prison without parole for his first-degree murder conviction and two years' imprisonment for his felony-firearm conviction.

After the issuance of *Miller* and *Montgomery*, and the enactment of MCL 769.25a, the Wayne County Prosecutor's Office prepared a sentencing memorandum indicating that it would not seek to resentence Rucker to life in prison without parole, but would instead seek to have Rucker resentenced on his first-degree murder conviction to a term of imprisonment "for which the maximum term shall be 60 years and the minimum term shall not be less than 25 years or more than 40 years," in accordance with MCL 769.25a(4)(c). The prosecution detailed Rucker's juvenile record. While numerous misconducts were documented for Rucker after his incarceration in 1993 and until 2016, the prosecutor's office noted that, while incarcerated, Rucker completed his GED and participated in numerous training and employment opportunities or classes. The prosecution requested that the trial court resentence Rucker to a term of 32 to 60 years' imprisonment for his first-degree murder conviction.

Rucker's resentencing hearing was held on February 28, 2017. After a statement from the victim's mother and Rucker's allocution, the trial court resentenced Rucker to "thirty to sixty years" in prison for the first-degree murder conviction, with credit of 8,132 days on the first-degree murder conviction and 730 days credit on the felony-firearm conviction. At the conclusion of the resentencing hearing, Rucker's counsel, for purposes of record preservation, stated the following:

-7-

Any challenges to mandatory sentencing range of twenty-five to forty on the minimum, and sixty on the maximum per [*Alleyne*[4]]. I'm just placing them on the record, and to preserve any ex-post facto challenges to the denial of disciplinary credits, per MCL 769.25a(6). [Footnote added.]

A judgment of resentencing was entered on February 28, 2017. Rucker appealed, contending that MCL 769.25a(6) unconstitutionally deprives him of disciplinary credits in violation of the Ex Post Facto Clause of the United States Constitution, US Cons art I, § 10, and that his minimum sentence was imposed in contravention of *Alleyne* because it was based on judge-found facts.

## III. SUBJECT MATTER JURISDICTION

Before addressing the substantive issues on appeal, it is necessary to address the prosecution's initial contention that this Court lacks subject matter jurisdiction to review defendants' claims. Specifically, the prosecution asserted in both appeals:

> Since defendant's constitutional claim has no effect on the validity of his sentence, but only to how the Department of Corrections is calculating parole eligibility, it seems that defendant's challenge would be better directed in a suit against the Department of Corrections and not in an appeal of his validly imposed sentence.

The prosecution in Wiley's case further expanded on this argument in its brief as follows:

> Judicial review of a Parole Board decision is governed by MCL 769.234(11). While the statute provides an avenue for the prosecution to appeal the granting of a prisoner's release on parole, it does not extend the same for a defendant seeking to challenge the Board's parole decisions, including the awarding or denial of disciplinary credits. . . . Importantly, this Court has no subject-matter jurisdiction to consider defendant's challenge to the Parole Board's decisions in determining a prisoner's eligibility for parole or to deny him parole.

The prosecution therefore contended that the "current appeal[s are] not the correct vehicle for such review" and suggested that these defendants can only seek redress by "filing a complaint for habeas corpus challenging the legality of [their] detention or an action for mandamus to compel the Board to comply with its statutory duties." We disagree.

First, the prosecution is mistaken regarding the gist of these appeals. It is well recognized and undisputed that the Department of Corrections "possesses sole jurisdiction over questions of parole." *Hopkins v Mich Parole Bd*, 237 Mich App 629, 637; 604 NW2d 686 (1999), quoting MCL 791.204. However, defendants are not challenging a decision of the Parole Board. Rather, defendants are challenging the constitutionality of the statutory provision, MCL

---

[4] *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013).

769.25a(6), that allows "credit for time already served," but that precludes the receipt of "any good time credits, special good time credits, disciplinary credits, or any other credits that reduce the defendant's minimum or maximum sentence." This Court is neither usurping nor trespassing on the Parole Board's authority and "exclusive discretion to grant or deny parole." *Hopkins*, 237 Mich App at 637. Under MCR 7.203(A)(1), this Court has jurisdiction over "[a] final judgment or final order of the circuit court. . . ." In a criminal case, a final order or judgment is defined as encompassing "a sentence imposed following the granting of a motion for resentencing." MCR 7.202(6)(b)(*iii*). We therefore reject the prosecution's initial challenge to this Court's subject matter jurisdiction over these appeals.

Second, the prosecution's initial desire to prohibit this Court from weighing in on a constitutional question of law that directly impacts defendants' sentences of incarceration and eligibility for parole unless they file a habeas corpus complaint or a mandamus action—for which appointment of counsel for the indigent is discretionary, not mandatory—smacks of gamesmanship. Regardless, our appellate courts have, in fact, weighed in on similar issues before without requiring civil actions to do so. See *People v Tyrpin*, 268 Mich App 368; 710 NW2d 260 (2005) (interpreting whether a defendant was entitled to good time credits), and *People v Cannon*, 206 Mich App 653; 522 NW2d 716 (1994) (interpreting MCL 51.282, regarding good time credits for county prisoners). Moreover, the relevant entities that would be involved in a habeas corpus complaint or mandamus action are actively involved in this case. The Michigan Attorney General, who acts as the chief law enforcement officer for the State[5] and has the authority to intervene in any matter in which, "in his own judgment the interests of the state require it[,]"[6] filed amicus briefs in both appeals[7] and his Deputy Solicitor General actively participated in oral argument.[8] He also took over the briefing for the prosecution. Thus, the executive branch, which speaks for the Michigan Department of Corrections (MDOC) and the Parole Board, has stated its position. In any event, we are not reviewing a challenge to the conduct of either the MDOC or the Parole Board. We are simply analyzing the constitutionality of a law passed by the third branch, our Legislature, and our decision will directly impact Wiley and Rucker, as MCL 769.25a(6) affects both their minimum and maximum sentences. Because everyone agrees that time is of the essence with respect to this constitutional issue, we deem it appropriate to address the question of law that was raised on appeal by Wiley and Rucker.

And finally, it is worth noting that the tables have turned on the parties' opposing positions with respect to whether we should address the constitutionality of MCL 769.25a(6). Shortly after the prosecution filed its briefs challenging subject matter jurisdiction as to the

---

[5] *Fieger v Cox*, 274 Mich App 449, 465; 734 NW2d 602 (2007).

[6] MCL 14.28

[7] See *People v Wiley*, unpublished order of the Court of Appeals, entered November 1, 2017 (Docket No. 336898) and *People v Rucker*, unpublished order of the Court of Appeals, entered November 1, 2017 (Docket No. 338870).

[8] See *People v Wiley; People v Rucker*, unpublished order of the Court of Appeals, entered March 23, 2018 (Docket Nos. 336898 and 338870).

constitutional questions presented, it changed its stance when the Sixth Circuit issued an opinion in *Hill v Snyder*, 878 F3d 193, 213 (6th Cir 2017), remanding a federal civil rights act case to the federal district court for a substantive analysis of what it deemed to be a "plausible" allegation that MCL 769.25a(6) violates the Ex Post Facto Clause.[9]  Following the Sixth Circuit's remand, the prosecution filed motions to expedite the appeals before us "on the merits," conceding that determining the matter immediately in these cases was appropriate because each

> "Defendant asserts that he is being denied good time and disciplinary credits that would permit early parole consideration by the Michigan Department of Corrections or a reduction of the maximum sentence.  Those claimed credits will continue to accrue during the pendency of this appeal and cannot possibly be applied, if defendant's claim is successful, until the appeal reaches finality."

This Court granted the prosecution's motions to expedite these appeals.[10]  And it was after the Sixth Circuit tipped a hopeful hand to the defendants when remanding *Hill* that they each filed motions seeking to voluntarily withdraw their appeals in this Court.  The prosecution objected to defendants' motions, asking in their briefs that we either "deny the motion[s], or, alternatively, grant the motion[s] and dismiss the appeal[s] with prejudice, ruling that [defendants Wiley and Rucker have] waived any claim that [they are] entitled to disciplinary credits under the Ex Post Facto Clause."  The prosecution accused defendants of forum shopping while claiming that it was not seeking to do the same thing itself, explaining,

> "The State is not looking to obtain a tactical advantage, but rather seeks resolution of the underlying question of state law in the appropriate forum.  The State courts are the proper forum and are best suited to interpret state law on how Michigan's credit system operates. . . .   The proper resolution of [Wiley's and Rucker's motion to dismiss] is to deny the motion and leave [Wiley and Rucker] to [their] arguments on appeal."

In his reply brief, Wiley accused the prosecution of forum shopping by objecting to his motion to withdraw, but he also requested that if we deny his motion, we hold his appeal in abeyance pending a decision in *Hill*.  This panel denied defendants' motions to withdraw,[11] and the matter proceeded to oral arguments, where all interested parties had their say.

---

[9] Judge Goldsmith's April 9, 2018 opinion, which will be discussed further herein, was the outcome of that remand.

[10] *People v Wiley, People v Rucker*, unpublished order of the Court of Appeals, issued January 17, 2018 (Docket Nos. 336898, 338870).

[11] *People v Rucker*, unpublished order of the Court of Appeals, issued February 16, 2018 (Docket No. 338870); *People v Wiley*, unpublished order of the Court of Appeals, issued March 5, 2018 (Docket No. 336898).

## IV. MCL 769.25A(6) AND THE EX POST FACTO CLAUSE

Defendants contend that MCL 769.25a(6) violates the Ex Post Facto Clause of the United States and Michigan Constitutions, US Const art I, § 10; Const 1963, art 1, § 10, because it precludes them from receiving disciplinary credits on their term-of-years sentences, and thus, it is a retroactive statute that increases their potential sentences or punishments. We agree.

To be preserved for appellate review, an issue must be raised before and addressed by the trial court. *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006). Wiley did not raise concerns regarding the Ex Post Facto Clause or any other constitutional claim at his resentencing. Consequently, this issue is not preserved with regard to Wiley. Nonetheless, we conclude that appellate review of his constitutional challenge is appropriate. See *People v Wilson*, 230 Mich App 590, 593; 585 NW2d 24 (1998) ("Although [a] defendant should have challenged the constitutionality of the statute in the trial court to preserve the issue for appellate review, we may still consider this constitutional question absent a challenge below."), *People v Blunt*, 189 Mich App 643, 646; 473 NW2d 792 (1991) ("[W]here a significant constitutional question is presented, as in this case, appellate review is appropriate."). Although Rucker did not ask the trial court to decide either his ex post facto challenge or his challenge, under *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013), to the minimum sentence imposed, he did place his objections on the record, so they could arguably be considered preserved.

This Court reviews de novo constitutional issues and questions of statutory interpretation. *People v Harris*, 499 Mich 332, 342; 885 NW2d 832 (2016). However, we review unpreserved constitutional issues for "plain error affecting defendant's substantial rights." *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Under the plain error rule, a "defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). "To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *Id*. at 356. "[R]eversal is only warranted if the defendant is actually innocent or the error seriously undermined the fairness, integrity, or public reputation of the trial." *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

As a starting point, we recognize that any challenge to the constitutionality of a statute is governed by certain precepts. Specifically:

> Statutes are presumed to be constitutional unless their unconstitutionality is clearly apparent. Statutes must be construed as proper under the constitution if possible. The party opposing the statute bears the burden of overcoming the presumption and proving the statute unconstitutional. [*People v MacLeod*, 254 Mich App 222, 226; 656 NW2d 844 (2002).]

The particular statutory provision being challenged as unconstitutional and violative of the Ex Post Fact Clause is MCL 769.25a(6), which states as follows:

A defendant who is resentenced under subsection (4) shall be given credit for time already served, but shall not receive any good time credits, special good time credits, disciplinary credits, or any other credits that reduce the defendant's minimum or maximum sentence.

MCL 769.25a(4) refers to the procedure for resentencing juvenile offenders convicted of first-degree murder both when the prosecution is seeking a continuation of a life in prison without parole sentence (regardless of the sentence ultimately imposed), MCL 769.25a(4)(b), and when the prosecution is not seeking a continuation of a life in prison without parole sentence, MCL 769.25a(4)(c). The latter subsection, which applies to defendants in the instant cases, directs that a trial court at resentencing "shall sentence the individual to a term of imprisonment for which the maximum term shall be 60 years and the minimum term shall be not less than 25 years or more than 40 years." *Id.*

As discussed by this Court in *People v Tucker*, 312 Mich App 645, 651; 879 NW2d 906 (2015):

> The United States and Michigan Constitutions prohibit ex post facto laws. *People v Callon*, 256 Mich App 312, 316-317; 662 NW2d 501 (2003), citing US Const art I, § 10; Const 1963, art 1, § 10. This Court has declined to interpret the Ex Post Facto Clause of the Michigan Constitution as affording broader protection than its federal counterpart. *Callon*, 256 Mich App at 317. All laws that violate ex post facto protections exhibit the same two elements: "(1) they attach legal consequences to acts before their effective date, and (2) they work to the disadvantage of the defendant." *Id*. at 318. "The critical question [for an ex post facto violation] is whether the law changes the legal consequences of acts completed before its effective date." *Id*. (quotation marks and citations omitted; alteration in original). This Court has identified four circumstances that implicate the Ex Post Facto Clauses:
>
>> A statute that affects the prosecution or disposition of criminal cases involving crimes committed before the effective date of the statute violates the Ex Post Facto Clauses if it (1) makes punishable that which was not, (2) makes an act a more serious criminal offense, (3) increases the punishment, or (4) allows the prosecution to convict on less evidence. [*Riley v Parole Bd*, 216 Mich App 242, 244; 548 NW2d 686 (1996).]

The purpose underlying ex post facto prohibitions is "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed," and to "restrict[] governmental power by restraining arbitrary and potentially vindictive legislation." *Weaver v Graham*, 450 US 24, 28-29; 101 S Ct 960; 67 L Ed 2d 17 (1981), overruled in part on other grounds *California Dep't of Corrections v Morales*, 514 US 499, 506 n 3; 115 S Ct 1597; 131 L Ed 2d 588 (1995). As stated and explained by the United States Supreme Court in *Weaver*:

[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. . . . [A] law need not impair a "vested right" to violate the ex post facto prohibition. Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect pre-existing entitlements. The presence or absence of an affirmative, enforceable right is not relevant, however, to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense. [*Id*. at 29-31 (citations omitted).]

Therefore, "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date." *Weaver*, 450 US at 31 (The Supreme Court held that as applied to a prisoner whose crime was committed before a statute's effective date, the statute reducing the amount of good time credit violated the Ex Post Facto Clause). "The imposition of a punishment more severe than that assigned by law when the criminal act occurred is a violation of the Constitution's *ex post facto* prohibition." *Hallmark v Johnson*, 118 F3d 1073, 1077 (CA 5, 1997), citing *Weaver*, 450 US at 30.

It is undisputed that MCL 769.25a *alters* the punishment for both convicted and future juvenile offenders committing first-degree murder. Our inquiry therefore focuses on "[w]hether a retrospective state criminal statute ameliorates or worsens conditions imposed by its predecessor." *Weaver*, 450 US at 33. In other words, for purposes of these appeals, does the challenged statutory provision serve to increase the punishment for a prisoner by imposing "new restrictions on eligibility for release" and therefore "make[] more onerous the punishment for crimes committed before its enactment"? *Id*. at 34, 36. We conclude that it does.

As noted at the outset of this opinion, we are not the first court faced with assessing the constitutionality of MCL 769.25a(6). Just a few weeks ago Judge Goldsmith issued his opinion analyzing this very issue. *Hill v Snyder*, opinion and order of the United States District Court for the Eastern District of Michigan, issued April 9, 2018 (Case No. 10-cv-14568). In a case brought by individuals similarly situated to Wiley and Rucker, Judge Goldsmith determined that MCL 769.25a(6) violates the United States Constitution's ban on ex post facto laws, and in fact, he certified a class of plaintiffs that includes Wiley and Rucker.[12] *Hill*, pp 26, 32. Although this Court is not bound by the decisions of lower federal courts, we may find their "analyses and

---

[12] Wiley's appellate counsel, who represents other parties in that action, was appointed to serve as class counsel. *Id*, p 32.

conclusions persuasive." *Abela v General Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). After a careful review of Judge Goldsmith's opinion and the applicable law, we find his analysis and conclusions to be, in the words of the Sixth Circuit, "thoughtful and well-reasoned."[13]

The salient portion of Judge Goldsmith's analysis, which we find persuasive and respectfully adopt as our own[14], states as follows:

> The crux of Plaintiffs' claim . . . hinges on an interpretation of the good time and disciplinary credit statutes, and whether these statutes previously afforded credit to individuals who were sentenced to life without parole. [*Hill*, p 6.]

> \* \* \*

> [T]he Court concludes that state law regarding good time and disciplinary credits is unmistakably clear and solidly supports [the incarcerated] Plaintiffs' position. Before modification by the Michigan legislature in 2014, Michigan law regarding good time and disciplinary credits made no distinction based on whether the prisoner was serving a life sentence and allowed such a prisoner to earn credit if otherwise eligible [*Id.*at 7-8]

> \* \* \*

> Good time and disciplinary credits are applied to a prisoner's minimum and/or maximum sentence in order to determine his or her parole eligibility dates.[7] Thus, if Michigan's statutory scheme permitted any Plaintiff to earn good time or disciplinary credits at the time the Plaintiff's crime was committed, the removal of such credits increases the Plaintiff's punishment and violates the Ex Post Facto Clause. [*Id*. at 16.]

> \* \* \*

> i. Statutory Interpretation

> Michigan's statutory scheme regarding good time and disciplinary credits has changed over the years. Prior to 1978, prisoners could apply good time credits to both their minimum and maximum terms; the law was amended in 1978

---

[13] The Sixth Circuit offered this sentiment when denying the state parties' recent motion for a 14-day stay so they could appeal Judge Goldsmith's permanent injunction, which included enjoining the state parties from enforcing or applying MCL 769.25a(6) and ordering them to calculate the good time credits and disciplinary credits for each member of the class who has been resentenced.

[14] The party designations would be switched, however, as the plaintiffs in *Hill* are similarly situated to defendants in the instant case.

to provide that prisoners convicted for certain crimes, including first and second-degree murder, could only apply good time credits to their maximum terms. See Wayne Cty. Prosecuting Atty. v. Mich. Dep't of Corrections, No. 186106, 1997 WL 33345050, at (Mich. Ct. App. June 17, 1997). In 1987, good time credits were eliminated altogether for offenses committed on or after April 1, 1987. Id.

Disciplinary credits were created in 1982, and were deducted from both the minimum and maximum sentences of prisoners convicted of certain crimes, including first and second-degree murder. See Mich. Comp. Laws § 800.33(5). Disciplinary credits were less favorable to prisoners than good time credits, as the amount of good time credits available to a prisoner increased with each year of imprisonment, while disciplinary credits remained constant over the entirety of the term to which they applied. See Lowe v. Dep't of Corrections, 206 Mich. App. 128, 521 N.W.2d 336, 338 (1994). The law changed again in 1998 to provide that prisoners who committed certain crimes, including first and second-degree murder, on or after December 15, 1998, or any other crime on or after December 15, 2000, are unable to earn disciplinary credits. See Mich. Comp. Laws §§ 800.33(14) and 800.34(5) . . . .[15]

The broad language used in both the good time and the disciplinary credit statutes does not draw any distinction based on whether the prisoner is serving a life sentence.[16] The good time credit statute provides as follows:

> (2) Except as otherwise provided in this section, a prisoner who is serving a sentence for a crime committed before April 1, 1987, and who has not been found guilty of a major misconduct or had a violation of the laws of this state recorded against him or her shall receive a reduction from his or her sentence as follows:
> (a) During the first and second years of his or her sentence, 5 days for each month.
> (b) During the third and fourth years, 6 days for each month.
>
> [ . . .]

---

[15] MCL 769.25a(6) only affects individuals who were convicted of first-degree murder for offenses committed prior to December 15, 1998 when they were under the age of 18, and who receive a post-*Miller* sentence in which they are eligible for parole.

[16] Although neither Wiley nor Rucker are entitled to good time credits based on the dates they committed their offenses, the statutory language used in both the good time and the disciplinary credit statutes is relevant to the constitutional question before this Court.

(g) From and including the twentieth year, up to and including the period fixed for the expiration of the sentence, 15 days for each month.

Mich. Comp. Laws § 800.33(2). The statute providing for disciplinary credit provides,

> (3) . . . [A]ll prisoners serving a sentence for a crime that was committed on or after April 1, 1987 are eligible to earn disciplinary and special disciplinary credits as provided in subsection (5). Disciplinary credits shall be earned, forfeited, and restored as provided in this section. Accumulated disciplinary credits shall be deducted from a prisoner's minimum and maximum sentence in order to determine his or her parole eligibility date and discharge date.
>
> [ . . .]
>
> (5) . . . [A]ll prisoners serving a sentence on December 30, 1982, or incarcerated after December 30, 1982, for the conviction of a crime enumerated in section 33b(a) to (cc) of 1953 PA 232, MCL 791.233b, are eligible to earn a disciplinary credit of 5 days per month for each month served after December 30, 1982. Accumulated disciplinary credits shall be deducted from a prisoner's minimum and maximum sentence in order to determine his or her parole eligibility dates.
>
> Mich. Comp. Laws § 800.33(3), (5).

Nothing in the text of the good time credit or disciplinary credit statutes excludes their application to prisoners serving life sentences. In fact, both statutes use language that is all encompassing. See Mich. Comp. Laws § 800.33(2) ("[A] prisoner who is serving a sentence for a crime ..."); Mich. Comp. Laws § 800.33(5) ("[A]ll prisoners serving a sentence ...").[17] Further, the disciplinary credit statute states explicitly that first-degree murderers earn disciplinary credit; it provides that disciplinary credits are earned by those convicted of a crime enumerated in Mich. Comp. Laws § 791.233b – which includes first-degree murder. See § 791.233b(n) (listing Section 316 of the Michigan penal code as one of the enumerated crimes); § 750.316 (first degree murder).[8]

Despite this unambiguous language, Defendants argue there is some shade of gray. They point out that the good time statute indicates that a prisoner "shall

---

[17] See also MCL 800.33(3).

-16-

receive a reduction" from his or her sentence, up to and including the "period fixed for the expiration of the sentence." Mich. Comp. Laws § 800.33(2). They argue that prisoners serving a life sentence cannot have that sentence "reduced," and that there is no time "fixed" for the "expiration" of such sentence; therefore, they say, this statute cannot be applied to prisoners serving a life term. . . .

This argument is unconvincing. The language may mean that the good time credits are not actually <u>applied</u> to a life sentence so long as it remains a life sentence. But there is no reason to think that a prisoner serving a life sentence could not, nonetheless, <u>earn</u> good time credits. They would be applied if and when the sentence was converted, for some reason, to a fixed sentence. Once changed to a term of years, there is an "expiration" that is "fixed," and the sentence can then be "reduced." In fact, this view of the statutory language is precisely the view of the MDOC, whose practice has routinely been to calculate credits when a prisoner previously serving a life sentence is subsequently resentenced to a term of years. . . .

As for the disciplinary credit statute, Defendants have no explanation for the explicit inclusion of first-degree murder as one of the crimes for which credits could be earned. They maintain that the language in other parts of the statute, which references deductions from a minimum and maximum sentence, means that the statute cannot apply to those serving a life sentence, as such prisoners have no minimum or maximum term. . . . But again, a plausible interpretation of the statute—and one that renders the statute as a whole internally consistent—is that the disciplinary credits are not <u>applied</u> to a life sentence, although prisoners serving such term still <u>earn</u> them. To agree with Defendants would be to ignore a portion of the statute, and courts have a "duty to give effect, if possible, to every clause and word of a statute." <u>Duncan v. Walker</u>, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (internal quotations omitted); <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (describing this rule as "a cardinal principle of statutory construction").

The lack of any ambiguity in the statutory language is, perhaps, best evidenced by the action of the Michigan legislature itself, in adopting Mich. Comp. Laws § 769.25a(6). If the legislature had believed that Michigan law did not provide credits to those convicted of first-degree murder, there would have been no purpose for a provision that expressly stripped them of those credits. The inference is ineluctable that the legislature understood that these individuals would invoke these credits unless the legislature affirmatively repealed them. In doing so, the legislature eloquently testified to the state of Michigan law prior to the adoption of Section 769.25a(6).

ii. Michigan Case Law

The Michigan Supreme Court is in accord with the view that good time credit is earned even by individuals serving life sentences. In <u>Moore v. Buchko</u>,

379 Mich. 624, 154 N.W.2d 437 (1967), the Michigan Supreme Court considered whether a prisoner who had been unconstitutionally sentenced to life imprisonment in 1938 for first-degree murder should receive credit, including good time credit, when he was resentenced following vacation of his conviction, retrial, and conviction for second-degree murder in 1958. Although no opinion received a majority of votes, all the Justices agreed that the prisoner was entitled to good time credit for the time he had served. Justice Souris's opinion, which was joined by Chief Justice Dethmers, concluded that the prisoner was "entitled by statute to the credit he seeks," which was "the nearly 20 calendar years he served under his invalidated conviction . . . and the regular and special good time credit he earned during that time." Id. at 438, 441 (Souris, J.). Justice Adams, writing for three other justices, wrote that a sentencing judge "shall give credit for time served under an illegal sentence," and that "[i]t follows, A [sic] fortiori, that such credit includes recognition of regular or special good time earned during an illegal incarceration." Id. at 445 n. 3 (Adams, J.).

Justice Brennan addressed the issue of whether the prisoner had earned good time credits in much greater detail, ultimately concluding that "the good time statute purports to give good time credits to every convict who behaves himself in prison." Id. at 447 (Brennan, J.). He described the rationale behind allowing all prisoners, even those serving a life term, to earn credits:

> Clearly, the purpose of this enactment is to encourage good behavior by prisoners and thus generally to improve conditions in the prisons and reduce custodial costs to the taxpayers.
>
> Presumably, the statute makes no distinction between lifers and other convicts by reason of the fact that the legislature wanted to encourage good behavior by lifers as well as by all other prisoners.
>
> Admittedly, the good time credit incentive is rather nebulous in the case of a convict imprisoned for life. But since hope and post conviction pleas spring eternal within the incarcerated human breast, it cannot be said the good time credit law is not at least some encouragement to them. At least, it appears that the legislature thought it would be so, and its policy determination is binding on this Court.

Id. Thus, seven of the eight justices joined an opinion that held that the prisoner was entitled to good time credit.[9]

Defendants attempt to distinguish Moore by arguing that Moore was resentenced to a term of years under law that existed at the time of his crime in 1938. . . . Plaintiffs' new sentencing options, they contend, did not exist until 2014. . . . However, Defendants have not explained why this should make a difference. Nothing in Moore suggests that the availability of a term-of-years

-18-

sentence while Moore served his first-imposed sentence had some bearing on the question of his entitlement to credit. Additionally, Defendants position that Plaintiffs should not receive credit because Michigan law did not provide a constitutional sentence for them until 2014 would punish Plaintiffs for the shortcomings of Michigan's unconstitutional sentencing of youth offenders.

Defendants argue that the Michigan Supreme Court recognized that the good time statute does not apply to someone serving a life sentence in Meyers v. Jackson, 245 Mich. 692, 224 N.W. 356 (1929).[18] In Meyers, the petitioner was convicted of murder and sentenced to life in prison; the governor later commuted his sentence "so that the same will expire 15 years from the date of sentence." Id. at 356. The court denied the petitioner's request for good time credit, stating that "if he accepts the benefit of the commutation granted[, he] must accept it in accordance with the terms imposed by the executive authority granting it." Id. at 356–357. The court also noted that "the question of good time applies only to those where the date of expiration of sentence is fixed. Petitioner was sentenced to imprisonment for life. The period of his imprisonment was not fixed." Id. at 356.

This last statement is dictum, as it was not necessary to the Meyers court's holding that a prisoner who accepts a commutation must accept it according to its terms. See Moore, 154 N.W.2d at 447 (Brennan, J.) ("[T]he language in the Meyers Case to the effect that good time allowances do not apply to life sentences was not essential to the decision there."); see also Petition of Cammarata, 341 Mich. 528, 67 N.W.2d 677, 682 (Mich. 1954) ("In Meyers . . . we held that a prisoner who accepts the benefit of a commutation must accept it in accordance with the terms imposed by the executive authority granting it.").

Thus, the only decision by the Michigan Supreme Court containing a holding applicable to our case accords with the view that credits are earned by those convicted of first-degree murder and applied to their sentences once those sentences become term-of-years sentences. . . .[10] [Id. at 16-22.]

* * *

For all of the above reasons, this Court interprets Mich. Comp. Laws § 800.33 to provide good time and disciplinary credits to prisoners who were serving a term of life imprisonment. The elimination of those credits by Mich. Comp. Laws § 769.25a(6), therefore, violates the Ex Post Facto Clause of the Constitution . . . Defendants must apply good time and disciplinary credits in

---

[18] The Michigan Attorney General cited *Meyers* and made the same argument in its amicus brief filed in the present case.

calculating parole eligibility dates for prisoners resentenced under Mich. Comp. Laws § 769.25a. [*Id*. at 24.]

---

[7] As the Sixth Circuit noted . . . "[C]redits deducted from a term-of-years sentence do not automatically result in earlier release; they merely hasten the date on which prisoners fall within the jurisdiction of the Michigan Parole Board. Even after an inmate falls within its jurisdiction, the Board retains discretion to grant or deny parole." *Id*. at 16 (citation omitted).

[8] Whatever exceptions to credit that exist in the statutes have nothing to do with whether the defendant committed first-degree murder. For example, the good time credit statute excepts those who have committed later crimes or were guilty of misconduct. See Mich. Comp. Laws § 800.33(2).

[9] Justice Black concurred only in the result and did not join any opinion.

[10] Defendants cite People v Tyrpin, 710 NW2d 260 (Mich. Ct. App. 2005), for support, but that case is distinguishable.[19] There, the defendant was originally given a determinate one-year jail sentence. After serving some time, the sentence was reversed, based on the prosecutor's appeal that an indeterminate sentence was required. Defendant argued on resentencing that he should receive disciplinary credit that he earned on the initial improper sentence. The court of appeals affirmed the trial court's refusal to award any disciplinary credit, reasoning that if the defendant had been properly sentenced to an indeterminate sentence originally, he would not have been entitled to such credit based on an express exclusion in the statutory language. (This was because, as discussed supra, individuals sentenced for assaultive crimes committed on or after December 15, 1998 were not eligible for disciplinary credits.) Our case is entirely different. Tyrpin sought credit that he would not have received had he been sentenced properly initially. Here, Plaintiffs do not seek any credit they would not have received had they been sentenced properly initially. Tyrpin thus is no help to Defendants. [*Id*. at 16-22].

---

In light of our determination that MCL 769.25a(6) violates the Ex Post Facto Clause, we need not address Wiley's other constitutional arguments claiming that the statute repeals an initiative adopted by the voters as "Proposal B" concerning parole eligibility or his claim that the statute violates the Title-Object Clause of the Michigan Constitution, Const 1963, art 4, § 24.

---

[19] The Michigan Attorney General cited *Tyrpin* and made the same argument in its amicus brief filed in the present case.

## V. USE OF JUDICIAL FACT-FINDING

Finally, Rucker contends that his resentencing under MCL 769.25a(4)(c) violated the Sixth Amendment because the trial court used judicially found facts in imposing a minimum sentence of 30 years' imprisonment (rather than 25 years' imprisonment). Citing *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013), and *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), Rucker argues that the only sentence that could be imposed was 25 to 60 years' imprisonment and that the increase in the minimum sentence to 30 years was improper because such increase required the use of facts found either by a jury or admitted by defendant. We disagree.

"This Court reviews de novo the proper interpretation of statutes." *People v Campbell*, 316 Mich App 279, 297; 894 NW2d 72 (2016). Constitutional issues are also reviewed de novo. *People v Pennington*, 240 Mich App 188, 191; 610 NW2d 608 (2000). "Any fact-finding by the trial court is to be reviewed for clear error, any questions of law are to be reviewed de novo, and the court's ultimate determination regarding the sentence imposed is for an abuse of discretion." *People v Hyatt*, 316 Mich App 368, 423; 891 NW2d 549 (2016). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. A trial court necessarily abuses its discretion when it makes an error of law." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citations omitted). "A trial court's factual finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. (citation and quotation marks omitted).

In accordance with MCL 769.25a(4)(c), if the prosecution opts not to seek resentencing to life in prison without parole,

> the court shall sentence the individual to a term of imprisonment for which the maximum term shall be 60 years and the minimum term shall be not less than 25 years or more than 40 years. Each victim shall be afforded the right under section 15 of the William Van Regenmorter crime victim's rights act, 1985 PA 87, MCL 780.765, to appear before the court and make an oral impact statement at any resentencing of the defendant under this subdivision.

At Rucker's resentencing, the victim's mother, Cynthia Cole, addressed the court, and opposed Rucker's receipt of less than a life sentence. The trial court also had available for its review sentencing memoranda prepared by the prosecution and defense counsel, detailing the original offense, Rucker's prior juvenile criminal history and misconduct while in prison, in addition to any accomplishments attained, such as the procurement of his GED. The prosecution requested that Rucker be resentenced to a term of 32 to 60 years' imprisonment. The trial court elected to impose a sentence of "thirty to sixty years" for the first-degree murder conviction, seeking to balance the propriety of the punishment to be imposed with the severity of the crime that occurred, while respecting the concerns expressed by the victim's family.

Contrary to Rucker's argument, the trial court's imposition of a 30-year minimum sentence did not constitute a Sixth Amendment violation proscribed by *Alleyne*. This Court squarely addressed this issue in this very context in *Hyatt*, 316 Mich App at 394-395, stating:

For all that was said in *Apprendi* [*v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000)] and its progeny, we note that the Supreme Court's holding in those cases must not be read as a prohibition against all judicial fact-finding at sentencing. Indeed, the rules from *Apprendi* and its progeny do not stand for the proposition that a sentencing scheme in which judges are permitted "genuinely to exercise broad discretion . . . within a statutory range" is unconstitutional; rather, as articulated in *Cunningham*, "everyone agrees" that such a scheme "encounters no Sixth Amendment shoal." *Cunningham* [*v California*], 549 US [270,] 294; 127 S Ct 856[; 166 L Ed 2d 856 (2007)] (citation and quotation marks omitted; alteration in original; emphasis added). See also *Alleyne*, 570 US at [116]; 133 S Ct at 2163 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."). Therefore, a judge acting within the range of punishment authorized by statute may exercise his or her discretion—and find facts and consider factors relating to the offense and the offender—without violating the Sixth Amendment. *Id*. at [116], 136 S Ct at 2163, citing *Apprendi*, 530 US at 481; 120 S Ct 2348. As explained in *Alleyne*, 570 US at [117]; 133 S Ct at 2163:

> [W]ithin the limits of any discretion as to the punishment which the law may have allowed, the judge, when he pronounces sentence, may suffer his discretion to be influenced by matter shown in aggravation or mitigation, not covered by the allegations of the indictment. [1 J Bishop, Criminal Procedure 50 (2d ed, 1872), § 85, at 54.]

> [E]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things. *Apprendi*, [530 US] at 519; 120 S Ct 2348 (THOMAS, J., concurring).

Rucker's reliance on *Lockridge* is similarly unavailing. In *Lockridge*, 498 Mich at 442, our Supreme Court was clear that the use of judge-found facts *in conjunction* with mandatory sentencing guidelines was the source of the Constitutional infirmity. Following the issuance of *Lockridge*, this Court in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016) further explained:

> The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with required application of those found facts for purposes of increasing a mandatory minimum sentence range. *Lockridge* remedied this constitutional violation by making the guidelines advisory, not by eliminating judicial fact-finding.

Rucker was resentenced within the minimum range statutorily mandated by MCL 769.25a(4)(c). The trial court was afforded discretion in determining and imposing a minimum sentence for Rucker that comported with the required statutory range. There is no Sixth Amendment violation as contemplated by *Alleyne*, *Lockridge*, or their progeny.

## VI. CONCLUSION

This Court has subject matter jurisdiction of defendants' appeals. MCL 769.25a(6) unconstitutionally deprives defendants of the application of earned disciplinary credits to their term-of-years sentences in violation of the Ex Post Facto Clause of the United States and Michigan Constitutions, US Const, art 1, § 10; Const 1963, art 1, § 10. The statute may not be used to prevent either Wiley or Rucker from receiving disciplinary credits on their minimum and maximum sentences. We need not address Wiley's other constitutional challenges to the statute. Rucker's argument regarding the use of judicial fact-finding when imposing a minimum sentence of 30 years' imprisonment lacks merit.

We affirm defendants' sentences, but declare MCL 769.25a(6) to be unconstitutional.

/s/ Jane M. Beckering
/s/ Amy Ronayne Krause