*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIAN D. PIERSON,

        Defendant-Appellant.

UNPUBLISHED
April 20, 2023

No. 353391
Clinton Circuit Court
LC No. 2019-010518-FH

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of larceny in a building, MCL 750.360, reckless driving, MCL 257.626, operating a motor vehicle with a suspended license, MCL 257.904(1); MCL 257.904(3)(a), and failure to report an accident resulting in damage to fixtures, MCL 257.621. During trial, defendant admitted to all of the misdemeanor charges but contested the larceny in a building charge. Defendant now appeals as of right his conviction of larceny in a building. We affirm.

## I. BACKGROUND

Defendant rented a motel room for one night for his male acquaintance and two women who needed a place to sleep. The following morning, defendant returned to the motel room to pick up his male acquaintance and the two women. The motel property manager, Robert Goodell, testified that he saw defendant and his male acquaintance loading various items from the motel into defendant's pickup truck just prior to their morning checkout. The motel owner, Kay Fan, testified that when she went to thank defendant for staying at her motel, she saw several of her belongings in the bed of defendant's truck, including blankets, pillows, sheets, and a cooktop. Fan testified that defendant moved everything in and out of his room while his male acquaintance organized the items in the truck. Both Fan and Goodell testified that they saw defendant walk out of his room with the motel's television and quickly toss the television back onto the bed when he realized that Fan saw him. When Fan investigated defendant's room, she discovered that the cooktop had been removed, and the wall mount that previously held the television was damaged.

Fan testified that she began screaming at defendant about her stolen belongings in his truck and yelled to other guests at the motel to call the police while she stayed close to the defendant's truck. Fan stated that she was able to recover a blanket and the cooktop (which had been broken) from defendant's truck and gave them to another motel guest. Even though Fan was standing in front of defendant's truck, defendant tried to drive away, so she climbed onto the hood of the truck in an effort to stop him. Fan testified that defendant drove approximately three or four blocks as she clung onto the hood of the truck, and that he struck a mailbox. She stated that he eventually stopped the truck, and that he and the others attempted to pull her off of the truck.

Defendant explained that he fled the motel because he "panicked" and was afraid. Defendant conceded his guilt with respect to the three driving-related misdemeanors, but he insisted that his male acquaintance stole the belongings and placed them in his truck without his knowledge. Defendant further testified that when Fan and Goodell saw him holding the television, he was merely returning it to the motel room after he discovered it in the bed of his truck.

II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he was guilty of larceny in a building. We disagree.

We review de novo challenges to the sufficiency of the evidence, viewing the evidence "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). The prosecution need not disprove every theory consistent with innocence, but it "is obligated to prove its own theory beyond a reasonable doubt, in the face of whatever contradictory evidence the defendant may provide." *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009). It is the trier of fact's role to determine "the weight of the evidence [and] the credibility of witnesses," and we will not interfere with that role. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "Circumstantial evidence and reasonable inferences arising therefrom can constitute satisfactory proof of the elements of a crime." *People v Reddick*, 187 Mich App 547, 551; 468 NW2d 278 (1991).

A larceny is "the unlawful taking of the personal property of another with the felonious intent to deprive the owner of it." *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016) (quotation marks and citation omitted). An individual is guilty of larceny in a building if he or she commits a larceny "in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public . . . ." MCL 750.360. Accordingly, to convict a defendant of larceny in a building, the prosecution must prove beyond a reasonable doubt that there was "(1) a trespassory taking (2) within the confines of a building and (3) the carrying away (4) of the personal property (5) of another (6) with intent to steal that property." *People v Thorne*, 322 Mich App 340, 344; 912 NW2d 560 (2017). "[P]roperty 'of another' is any property in which another individual holds the right to possess as against the defendant at the time of the taking." *Id.* (quotation marks and citation omitted). A larceny in a building is complete as soon as the unlawful taking occurs. See *People v Williams*, 491 Mich 164, 170-171; 814 NW2d 270 (2012) (quotation marks and citation omitted).

There was sufficient evidence to support defendant's conviction of larceny in a building. First, Fan was the owner of the motel, owned the stolen items, and did not consent to the items being taken from her motel. Fan testified that she saw a blanket, pillow, and sheets from her motel "packed up in a very neat way" in the bed of defendant's pickup truck. Fan also discovered that the cooktop that was in defendant's room had been removed and the wall mount that previously held the television was damaged. She also caught defendant walking out of his room with the television.

Next, a trespassory taking occurred in a building. Goodell testified that defendant and his acquaintances had removed items from the motel room and placed them into the back of defendant's truck. Fan testified that defendant carried "everything in and out" of the motel room. Fan also testified that she saw defendant holding the television "halfway out of [the] door" and that he "just backed out [sic] and put the [television] on the bed" when he saw her. Goodell testified that he saw defendant "attempting to come out the [motel] door" with the television, but defendant "backed up . . . into the room" after he saw Fan and tossed the television onto the bed. Defendant testified that he merely attempted to return the television after he discovered it in the back of his truck, but both Fan and Goodell testified that they saw defendant walking *out* of his motel room with the television and that defendant quickly tossed the television onto the bed when he realized that Fan had seen him attempting to leave with it. Witness credibility is a question of fact left up to the jury, *People v Odom*, 276 Mich App 407, 419; 740 NW2d 557 (2007), and we will not interfere with the jury's determination, *Kanaan*, 278 Mich App at 619. Further, defendant did not have permission to take Fan's belongings. Indeed, Fan, Goodell, and defendant all testified that Fan began screaming when she discovered some of her items in defendant's truck. Fan removed the cooktop from defendant's truck, but defendant still had Fan's pillows, blankets, and sheets in his truck when he fled.

Lastly, a rational jury could conclude from the evidence presented that defendant intended to permanently deprive Fan of her belongings. Fan and Goodell both testified that they saw defendant leaving the motel room with the television in his hands, and he put the television back onto the bed when he saw Fan watching him. Fan testified that when she investigated defendant's room after she saw him holding the television, she saw that the television's wall mount had been damaged. Fan's cooktop had been wrapped in a blanket and placed in the back of defendant's truck, and her pillows, blankets, and sheets had all been "packed up in a very neat way" in the bed of defendant's pickup truck. Fan stated that defendant took "everything in and out" of the motel room while his male acquaintance "watch[ed] [and] arranged the pickup[.]" Additionally, defendant drove away from the motel with Fan's pillows, blankets, sheets, and other "tiny little things" in the bed of his truck. That defendant left the television behind and Fan recovered the cooktop is irrelevant because the larceny was complete when defendant took and carried away the items from the motel room. See *Williams*, 491 Mich at 170-171. Given the testimony at trial, the jury could have reasonably inferred that defendant intended to permanently deprive Fan of her belongings. See *Reddick*, 187 Mich App at 551.

## III. STANDARD 4 BRIEF

Defendant also filed a supplemental Standard 4 brief pursuant to Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004). Defendant's brief is difficult to navigate—he argues that the Michigan Secretary of State must possess all of the laws of this state

to guarantee that the law is "intact." Defendant also states that in another case (unrelated to his), the Secretary of State admitted in a letter that it does not possess any law prior to December 6, 2018. Defendant concludes that as a result, no law existed prior to December 6, 2018, that is "intact." It appears that defendant is trying to argue that no "larceny in a building" law was legitimately codified and in place until after December 6, 2018, so he could not have violated any such law. We need not address this issue because defendant has abandoned it by failing to cite caselaw or any authority in support of his claims or provide an analysis of the issue. "A party may not merely state a position and then leave it to this Court to discover and rationalize the basis for the claim," nor may a party "leave it to this Court to search for authority to sustain or reject its position." *People v Mackle*, 241 Mich App 583, 604 n 4; 617 NW2d 339 (2000) (quotation marks and citation omitted). Failing to fully brief "the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). If, however, we were to substantively address defendant's argument, we would conclude that it is without merit.

Both the United States and Michigan Constitutions prohibit ex post facto laws. US Const, art I, § 10; Const 1963, art 1, § 10. "A law is considered ex post facto if it: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a committed crime; or (4) allows the prosecution to convict on less evidence." *People v Betts*, 507 Mich 527, 542; 968 NW2d 497 (2021) (quotation marks, citation, and alteration omitted). "The critical question for an ex post facto violation is whether the law changes the legal consequences of acts completed before its effective date." *People v Wiley*, 324 Mich App 130, 152; 919 NW2d 802 (2018) (quotation marks, citation, and alterations omitted).

MCL 750.360, which criminalizes larceny in a building, went into effect in 1931, and the same version of the statute has been in effect since its last amendment in 1947. See 1931 PA 328; 1947 PA 190. Defendant's larceny offense occurred in November 2019, which was well after the statute's last amendment went into effect. See 1947 PA 190. The statutory prohibition against larceny in a building was in effect at the time that defendant committed the crime, so the constitutional prohibition against ex post facto laws was not violated. See *Wiley*, 324 Mich App at 152-153.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica