*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JESSICA LYNN HURLEY,

      Defendant-Appellant.

UNPUBLISHED
May 19, 2022

No. 349640
Wayne Circuit Court
LC No. 19-000925-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

JESSICA LYNN HURLEY,

      Defendant-Appellee.

No. 358067
Wayne Circuit Court
LC No. 19-000925-01-FC

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

In Docket No. 349640, defendant appeals as of right her jury trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b) (relationship and victim was at least 13 but less than 16 years old), one count of delivery of a controlled substance (cocaine) to a minor, MCL 333.7410(1), one count of selling or furnishing alcohol to a minor, MCL 436.1701(1), and one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d (relationship).[1]  Defendant was sentenced to concurrent terms of 9 to 20 years' imprisonment for each count of CSC-I, 3 to 40 years' imprisonment for delivery of a controlled substance to a minor, time served for selling or furnishing alcohol to a minor, and 3 to 15 years'

---

[1] The jury found defendant not guilty of delivering marijuana to a minor, MCL 333.7410(1).

imprisonment for CSC-III. This Court granted defendant's motion to remand to the trial court to allow her to move for a new trial and an evidentiary hearing to explore allegations that the jury was exposed to extraneous information. *People v Hurley*, unpublished order of the Court of Appeals, entered January 29, 2020 (Docket No. 349640). On remand, the trial court vacated defendant's convictions and sentences and granted her motion for a new trial.

In Docket No. 358067, the prosecution appeals by leave granted[2] the trial court's orders granting defendant's motion for a new trial and vacating defendant's convictions and sentences, arguing that they constituted an abuse of discretion. We agree that the trial court abused its discretion in this regard. Therefore, we reverse the trial court's order granting defendant's motion for a new trial and reinstate defendant's convictions and sentences. In Docket No. 349640, we affirm defendant's convictions and sentences.

## I. BACKGROUND

Defendant was convicted as noted above after a jury trial during which her stepson testified that defendant gave him alcohol, marijuana, and cocaine, and had oral and vaginal sex with him multiple times when he was 15 or 16 years old. Defendant denied her stepson's allegations and theorized that her husband encouraged her stepson to fabricate the allegations to use as leverage in their divorce. Following defendant's convictions, defense counsel received a notarized letter from NB, one of the alternate jurors who was released from jury service before deliberations. NB explained that she was dismayed by the verdict and believed that it was the product of juror misconduct or "general indifference." More specifically, NB alleged:

> For instance, juror #2 did not discuss the case inappropriately, which is why I didn't say anything to the judge as I didn't think what she had done was breaking a rule, but she mentioned something I found troubling. One morning in the jury room before we went out to listen to the case, she mentioned how she knew we weren't allowed to do any research into the case in any way so she didn't but that she had researched the rates of sexual assault in men, claiming that she read a statistic that something like 70% of men had been sexually assaulted in some form but that they didn't report it because they liked it. She said that maybe that could apply to this case, but then said nothing else about the topic. I fear that she had a predisposed notion that the defendant was guilty specifically because she read into those statistics and believed that Ms. Hurley could have raped her stepson. I do not believe she perceived Ms. Hurley innocent until proven guilty beyond a reasonable doubt; I believe she thought the opposite.

> I would also like to discuss how juror #5 was seated directly behind me for the duration of the trial. There were repeated instances that I heard heavy breathing and light snoring. At one time I did turn around during witness testimony to see him dozing off in his chair. I fear that he could not have possibly made a fair assessment of the evidence presented because he did not, in fact, hear all the

---

[2] The order granting leave to appeal also consolidated the two appeals. *People v Hurley*, unpublished order of the Court of Appeals, entered November 16, 2021 (Docket No. 358067).

evidence because of his inability to stay awake during some of the testimony. In addition to the above, when we were later in the jury room toward the end of the trial before two jurors were dismissed, we were all talking about how we hoped we weren't dismissed because we wanted to finally be able to discuss the case with the other jurors and see the outcome of the trial. Juror #5 expressed not caring at all about the outcome because he just "wanted to go home" and hoped that he was one of the two chosen to be dismissed.

On remand, the trial court held an evidentiary hearing at which NB testified consistent with her letter. Juror 2, TM, and Juror 5, CM, also testified in response to NB's allegations. The trial court determined that defendant failed to establish that she was entitled to a new trial on the basis of her claims regarding CM because he provided a credible explanation for having his eyes closed. In reaching that conclusion, the trial court also noted that it routinely monitored juries to make sure jurors are not sleeping and always noted on the record when it suspected a juror had fallen asleep. With respect to the claims regarding TM, however, the trial court found "very substantial proof of this jury having been exposed to extraneous influence and evidence, which created a real and substantial possibility that [defendant] . . . could have been adversely affected, in the jury's verdict." The trial court explained that TM shared inappropriate extraneous evidence with the jury, and that it substantially related to a material aspect of the case, namely, sexual assault of male minors. The trial court reasoned that TM's statement that 70% of men she knew, as opposed to read as described in NB's letter, were the victims of sexual assault as minors was an extrinsic influence because there was no evidence to that effect presented at trial. The trial court also noted that TM did not answer voir dire questions truthfully, as she did not disclose her opinions and experience when the proposed jurors were asked if they had any opinions or personal experiences that might influence them in favor of either party or if they had any friends or family members who had been the victim of a crime. The trial court was confident that if TM had disclosed her experience during voir dire, she would have been excused either for cause or peremptorily. The trial court further noted that TM spoke about her beliefs before the jury was permitted to deliberate, contrary to the jury instructions. In reaching its decision regarding TM's conduct, the trial court found that NB's testimony was credible and that TM's testimony lacked credibility.

## II. NEW TRIAL

This Court reviews a trial court's ruling on a motion for a new trial for an abuse of discretion. *People v Johnson*, 245 Mich App 243, 250; 631 NW2d 1 (2001). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008). Inasmuch as the trial court's decision involved assessment of witness credibility, the trial court's credibility determinations are entitled to deference. *People v Traver*, 328 Mich App 418, 426; 937 NW2d 398 (2019).

The prosecution argues that the trial court abused its discretion by granting defendant's motion for a new trial on the basis of the jury's exposure to extraneous influences. We agree.

A criminal defendant is entitled to be tried by a fair and impartial jury and to have his or her guilt determined only be the evidence presented in open court. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). Several important trial rights "embodied in the Sixth Amendment" are implicated when the jury considers matters not properly introduced in evidence, including the right

-3-

to confront and cross-examine witnesses, as well as the right to assistance of counsel. *Id*. A new trial is therefore necessary when a defendant can establish that (1) the jury was exposed to extraneous influences, and (2) such exposure "created a real and substantial possibility" that the extraneous influences could have affected the verdict. *Id*. at 88-89. If the defendant meets his or her burden regarding both requirements, the burden shifts to the prosecution to prove that the error was harmless beyond a reasonable doubt. *Id*. at 89.

The trial court granted defendant a new trial reasoning, in part, that TM's comment about 70% of men she knew having been sexually assaulted as minors was an extraneous influence. We agree the prosecution's contention that the trial court erred in this regard. Matters inherent to the deliberative process do not constitute extraneous influences. *Id*. at 91. " 'External' matters include publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room." *People v Garay*, 320 Mich App 29, 41; 903 NW2d 883 (2017), vacated in part on other grounds and rev'd in part on other grounds 506 Mich 936 (2020), quoting *Warger v Shauers*, 574 US 40, 51; 135 S Ct 521; 190 L Ed 2d 422 (2014) (some quotation marks omitted). TM testified that her belief regarding the prevalence of male sexual assault victims was not a "statistic." Rather, she explained, it was deduced from years of conversations with male coworkers about the issue. In other words, her belief about male sexual assault related to her personal experiences.[3] Further, a jury discussion about similar criminal activity in a different case is not an extraneous influence. Compare *Smith v Nagy*, 962 F3d 192, 202 (CA 6, 2020) (explaining that there was "no external influence where a jury decided to sentence a defendant to death after discussing a news account of a different defendant who had committed murder after being paroled"). Because TM did not share case-specific information with the jury, her comment did not expose the jury to the type of extraneous influence that would warrant a new trial under *Budzyn*. The trial court abused its discretion by concluding otherwise.

We further agree that the trial court abused its discretion by granting defendant's motion for a new trial on the basis of juror misconduct. "An allegation of juror misconduct, even if the alleged misconduct did actually occur, will not warrant a new trial unless the party seeking the new trial can show that the misconduct [was] such as to affect the impartiality of the jury or disqualify them from exercising the powers of reason and judgment." *People v Dunigan*, 299 Mich App 579, 586; 831 NW2d 243 (2013) (quotation marks and citation omitted; alteration in original). See also *People v Fox (After Remand)*, 232 Mich App 541, 557; 591 NW2d 384 (1998) ("Before this Court will order a new trial on the ground of juror misconduct, some showing must be made that the misconduct affirmatively prejudiced the defendant's right to a trial before a fair and impartial jury."). Likewise, "[a] juror's failure to disclose information that the juror should have disclosed is only prejudicial if it denied the defendant an impartial jury." *People v Miller*, 482 Mich 540, 548; 759 NW2d 850 (2008).

During voir dire, the potential jurors were asked (1) if they had any opinions or personal experiences that might influence in them in favor of or against the prosecution, defense, or any

---

[3] Notably, although the trial court found parts of TM's testimony incredible, it repeatedly referred to the fact that TM's belief arose from her experiences.

witness; and (2) whether they had any close friends or family members who had been the victim of a crime. Although TM was not in the first group of potential jurors to whom these questions were asked, she subsequently said that she would not have answered any of the questions in the affirmative. Citing this response, the trial court observed that TM failed to disclose her personal experiences and opined that TM would undoubtedly have been removed from the jury had she been honest. The trial court also concluded that TM's experience precluded her from being an impartial juror and that defendant's right to a fair trial was prejudiced.

The prosecution contends that the trial court erred by considering the jurors' testimony after it became apparent that TM's comment related to her experiences. We agree. Historically, common law prohibited the use of juror testimony to impeach a verdict, except in situations where the verdict was affected by extraneous influences. *People v Fletcher*, 260 Mich App 531, 539; 679 NW2d 127 (2004). For alleged misconduct relating to "influences internal to the trial proceedings," courts were barred from "invad[ing] the sanctity of the deliberative process." *Id*. This rule has been codified in MRE 606(b), which provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

In *Warger*, 574 US at 43, a juror was accused of deliberately lying during voir dire after the juror spoke during deliberations about her daughter's experience in a motor vehicle accident, and a post-trial affidavit was introduced to that effect. *Id*. at 43. Analyzing the issue under the substantially similar federal rule of evidence, FRE 606(b), the United States Supreme Court stated that "[a] postverdict motion for a new trial on the ground of *voir dire* dishonesty plainly entails an inquiry into the validity of [the] verdict," and therefore implicated FRE 606(b)'s limitation on juror testimony. *Id*. at 44-45 (quotation marks omitted; alteration in original). The Court concluded that the affidavit "was not admissible under [FRE 606(b)'s] exception for evidence as to whether 'extraneous prejudicial information was improperly brought to the jury's attention,' " reasoning that the affidavit concerned an "internal" matter because did not implicate "any specific knowledge" about the accident. *Id*. at 51-52. The Court added, "Even if jurors lie in *voir dire*, juror impartiality is adequately assured by the parties' ability to bring to the court's attention any evidence of bias before the verdict is rendered, and to employ nonjuror evidence even after the verdict is rendered." *Id*. at 51. Ultimately, the Court affirmed the federal district court's refusal to grant a new trial. *Id*. at 43-44, 53.

Here, too, the testimony about TM's statements and experiences occurred in the context of an inquiry into the validity of the verdict, during which juror testimony is prohibited unless it relates to extraneous prejudicial information, outside influences, or a mistake on the verdict form.

MRE 606(b). Because the evidence concerning TM's experiences related to internal matters, i.e., the evidence did not involve the specific case at hand during the conduct of the trial, the trial court erred by considering it to determine that TM's statement required a new trial. Setting aside such evidence, the trial court had no basis for concluding that TM committed misconduct, and its decision to grant a new trial fell outside the range of principled outcomes.

Defendant also argues that she was entitled to a new trial because CM slept through the proceedings and made it known that he wanted to go home. We disagree.

Preliminarily, we again note that the trial court erred by considering evidence of CM's alleged misconduct. We repeat that juror testimony may only be admitted to impeach a verdict when the testimony concerns "(1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form." MRE 606(b). Testimony addressing whether CM was sleeping does not fall within any of the exceptions set forth in MRE 606(b) and, therefore, should not have been taken into account by the trial court. The error, however, was harmless.

As noted earlier, "[a]n allegation of juror misconduct, even if the alleged misconduct did actually occur, will not warrant a new trial unless the party seeking the new trial can show that the misconduct [was] such as to affect the impartiality of the jury or disqualify them from exercising the powers of reason and judgment." *Dunigan*, 299 Mich App at 586 (quotation marks and citation omitted; alteration in original). In *Dunigan*, this Court reasoned that the defendant could not establish that he was prejudiced by a sleeping juror, noting that the juror was properly admonished and that was "no indication of what, if any, testimony the juror missed." *Id*. The same general logic applies here. The trial record lacks any indication that CM was sleeping. And even if we accepted NB's assertion in her letter that she observed CM sleeping, there is no way to discern what, if any, testimony he might have missed. Like in *Dunigan*, defendant is simply unable to establish that she was prejudiced. The trial court did not abuse its discretion by denying defendant's motion for a new trial with respect to this theory.

### III. EVIDENTIARY ERROR

Lastly, defendant challenges the trial court's exclusion of testimony from Children's Protective Services (CPS) workers at her trial. Defendant did not preserve this issue for review by objecting to exclusion of the evidence on the record and making an offer of proof regarding the excluded evidence. *People v Snyder*, 462 Mich 38, 42-43; 609 NW2d 831 (2000); *People v McPherson*, 263 Mich App 124, 137; 687 NW2d 370 (2004). Unpreserved claims of error are reviewed for plain error affecting the defendant's substantial rights. *People v Brown*, 326 Mich App 185, 195; 926 NW2d 879 (2019). "Under the plain error rule, a defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Wiley*, 324 Mich App 130, 150-151; 919 NW2d 802 (2018) (quotation marks and citation omitted). "To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *Id*. at 151 (quotation marks and citation omitted). Reversal is warranted "only when the defendant is actually innocent or the error seriously affected the fairness,

integrity, or public reputation of judicial proceedings." *People v Thorpe*, 504 Mich 230, 252-253; 934 NW2d 693 (2019).

The party who advances a claim of error bears "the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Defendant failed to meet that burden in this case and, instead, relies on vague references to "CPS witnesses" without detailing the substance of their proposed testimony.

Our review of the record does not shed further light on this issue. At the beginning of defendant's trial, the parties agreed that they would not mention CPS during voir dire or opening statements. The trial court added that if the parties wanted to discuss the CPS issue, they would address the matter before beginning witness testimony the following day. But the transcript from the next day's proceedings does not reflect any such discussion taking place. Later, defendant testified that the CPS complaints against her were investigated and closed. The trial court then instructed the jury to disregard that portion of defendant's testimony, noting that the attorneys "have been advised, before, about this issue." This sparse record does not elucidate the substance of the proposed testimony or the trial court's reasons for excluding it. Consequently, there is no basis for this Court to find plain error affecting defendant's substantial rights.

IV. CONCLUSION

In Docket No. 358067, we reverse the trial court's order granting defendant's motion for a new trial and reinstate defendant's convictions and sentences. In Docket No. 349640, we affirm defendant's convictions and sentences.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan