*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CORNELIUS CORTEZ COPELAND,

Defendant-Appellant.

FOR PUBLICATION
March 14, 2024
9:05 a.m.

No. 363925
Oakland Circuit Court
LC No. 2000-170369-FC

---

Before: O'BRIEN, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

This is an appeal as of right from defendant's resentencing under MCL 769.25a. A jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), on May 23, 2000. Defendant was 16 years old when he committed the charged offense but was sentenced to mandatory life imprisonment without parole. After defendant's sentence became final, it was deemed unconstitutional, and he was required to be resentenced. The prosecution chose not to seek re-imposing defendant's original sentence of life imprisonment without parole, so defendant was required to be resentenced to a term of years. Following an evidentiary hearing, the trial court resentenced defendant to 38 years and 3 months to 60 years' imprisonment, with credit for 7,697 days served. Defendant challenges that sentence on appeal. We affirm.

## I. BACKGROUND

In 1998, when defendant was 16 years old, he worked for a Kentucky Fried Chicken (KFC), but was fired for threatening his manager. On March 11, 1998, defendant went back to the KFC where he had worked, apologized to his manager, and asked for his job back. The manager obliged and rehired defendant. The manager did not have any work for defendant at the time, but allowed defendant to wait at the KFC until his ride arrived. Defendant waited at the restaurant until after it closed. Then, while the manager was in the back with the safe open, defendant shot her in the back of the head and stole roughly $3,000 from the safe. Defendant was not arrested for the murder until October 7, 1999.

On May 23, 2000, a jury convicted defendant of first-degree murder (felony murder), MCL 750.316(1)(b), first-degree premeditated murder, MCL 750.316(1)(a), and two counts of carrying

a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] He was sentenced to a mandatory term of life without the possibility of parole for first-degree murder.

In 2012, the United States Supreme Court decided *Miller v Alabama*, 567 US 460, 489; 132 S Ct 2455; 183 L Ed 2d 407 (2012), which held that sentencing individuals to mandatory life without the possibility of parole for crimes they committed before they turned 18 years old violated the Eight Amendment's ban on cruel and unusual punishments. Four years later, the Supreme Court announced in *Montgomery v Louisiana*, 577 US 190; 136 S Ct 718; 193 L Ed 2d 599 (2016) that *Miller* applied retroactively on state collateral review. The Michigan Legislature initially responded to *Miller* by enacting MCL 769.25, which set forth the procedure for sentencing criminal defendants who fit *Miller*'s criteria and resentencing defendants who fit *Miller*'s criteria but whose initial mandatory sentences were not yet final. See *People v Wiley*, 324 Mich App 130, 137; 919 NW2d 802 (2018). Simultaneously, in the event that *Miller* was held to apply retroactively, our Legislature enacted MCL 769.25a, "which set forth the procedure for resentencing defendants who fit *Miller*'s criteria even if their cases were final." *Wiley*, 324 Mich App at 137.

As a juvenile offender who was sentenced to a mandatory term of life imprisonment without the possibility of parole and whose sentence was final before *Miller* was decided, defendant was entitled to resentencing under MCL 769.25a. The prosecution initially sought to reimpose defendant's sentence of life without the possibility of parole pursuant to MCL 769.25a(4). The prosecution later withdrew this motion, however. By default, then, defendant could only be resentenced to a term of years. See *People v Taylor*, 510 Mich 112, 132; 987 NW2d 132 (2022).

A resentencing hearing was held on October 31, 2022. The trial court reviewed a number of documents, along with the previous record, in preparation for the hearing. These additional documents included (1) the presentence investigation report; (2) a psychological evaluation of defendant prepared in 2000 upon defendant's entrance to the prison when he was 18 years old; (3) the Correctional Offender Management Profiling for Alternative Sanctions report (the COMPAS report), dated February 19, 2016, when defendant was 34 years old; and (4) the psychological evaluation of Dr. Carol Holden (the Holden report), dated March 11, 2022, when defendant was 40 years old. After listening to the parties' arguments and providing a lengthy rationale (which will be discussed more below), the trial court resentenced defendant to 38 years and 3 months to 60 years in prison, with credit for the time defendant already served. This appeal followed.

## II. STANDARD OF REVIEW

Sentencing decisions are reviewed for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269;

---

[1] Both defendant's felony-murder conviction and one of his felony-firearm convictions were vacated.

666 NW2d 231 (2003). A trial court necessarily abuses its discretion if it imposes a sentence that violates the principle of proportionality. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017). The principle of proportionality requires that every sentence be tailored to the individual defendant; the sentence imposed must be proportionate to the seriousness of the offense and the background of the offender. *Steanhouse*, 500 Mich at 472. A trial court's factual findings are reviewed for clear error. *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

## III. GOVERNING LAW

Sentencing juvenile defendants convicted of first-degree murder can take a number of different tracks. It matters whether the defendant's sentence was final before *Miller* was decided; if it was (such as with defendant here), then the defendant's case proceeds under MCL 769.25a. When proceeding under MCL 769.25a, it matters whether the prosecution moves to reimpose the original sentence of life without the possibility of parole. If, such as here, the prosecution does not, then the trial court must sentence the defendant to a term of years. See *Taylor*, 510 Mich at 132. The range for such a sentence is broad: the defendant may receive a minimum sentence of 25 to 40 years and a maximum sentence of 60 years. MCL 769.25a(4)(c).

In *People v Boykin*, 510 Mich 171, 189; 987 NW2d 58 (2022), our Supreme Court held that when sentencing a juvenile defendant to a term-of-years sentence under MCL 769.25a, the sentencing court must still consider the defendant's youth and treat it as a mitigating factor. The Court explained that the touchstone of any sentencing decision is proportionality, which looks to the circumstances of the offense and the background of the offender. *Id*. at 188. Since a defendant's youth is part of a juvenile defendant's background, courts must consider the characteristics of youth before sentencing a juvenile defendant in order for the resulting sentence to be proportionate. *Id*.

In practical terms, this means that courts should consider a defendant's youth as part of the "four basic sentencing considerations" first identified in *People v Snow*, 386 Mich 586; 194 NW2d 314 (1972), which courts must always bear in mind before imposing a sentence. *Boykin*, 510 Mich at 188-189. Those considerations are "(1) 'reformation of the offender'; (2) 'protection of society'; (3) 'disciplining of the wrongdoer'; and (4) 'deterrence of others from committing like offenses.' " *Id*. at 188, quoting *Snow* 386 Mich at 592. "Youth affects these considerations," *Boykin* explained, such that youth "will inevitably factor into *Snow*'s four considerations." *Boykin*, 510 Mich at 188-189.

But *Boykin* rejected the idea that trial courts sentencing juvenile defendants are required to articulate "*specific* factors on the record." *Id*. at 192. *Boykin* instead recognized the general rule that sentencing courts in Michigan must justify an imposed sentence in a manner sufficient to facilitate appellate review, and held that this was the same standard that applied to courts sentencing juvenile defendants. *Id*. "[N]ever before have we imposed a requirement that a sentencing court give a detailed on-the-record explanation of one or more specific factors, and we do not impose such a requirement here." *Id*.

Along similar lines, *Boykin* reiterated that courts are required to "consider[] the mitigating qualities of youth within *Snow*'s sentencing criteria," but said that this "stops short of requiring trial courts to articulate a basis on the record to explain how youth affected the sentence imposed."

*Id*. at 193. A trial court sentencing a juvenile defendant will necessarily consider the defendant's youth and treat it as a mitigating factor, *Boykin* reasoned, because no " 'meaningful daylight exists between (i) a sentencer's discretion to consider youth, and (ii) the sentencer's actual consideration of youth,' " so " 'it would be all but impossible for a sentence to avoid considering that mitigating factor.' " *Id*. quoting *Jones v Mississippi*, 593 US 98, 114; 141 S Ct 1307; 209 L Ed 2d 390 (2021).

*Boykin* accordingly held that trial courts sentencing juvenile defendants are required to consider a defendant's youth and treat it as a mitigating factor, but "this consideration need not be articulated on the record." *Boykin*, 510 Mich at 193-194. "[T]here is no authority that imposes a higher standard of articulation regarding youth beyond our general requirement that a trial court must adequately explain its sentence on the record in order to facilitate appellate review." *Id*. at 194.

With this understanding of the law governing the trial court's discretion when resentencing defendant under MCL 769.25a, we turn to defendant's arguments on appeal.

## IV. DEFENDANT'S ARGUMENTS ON APPEAL

Defendant raises four "issues" on appeal, but three of these "issues" relate to a single matter—the proportionality of defendant's sentence. In two of these proportionality-related "issues," defendant claims that the trial court made clearly erroneous factual findings, and asserts that those factual errors led the trial court to improperly weigh the mitigating effects of youth. In a third issue, defendant argues that, even if the record made by the trial court contains no errors, the resulting sentence was still disproportionate. These proportionality arguments are addressed below.

In his fourth "issue," defendant raises a separate and broader challenge to his sentence; he contends that the trial court failed to adequately justify defendant's sentence because the court did not consider the mitigating qualities of youth within *Snow*'s sentencing criteria. Defendant's argument in this respect is understandably cursory; after all, the trial court either considered the mitigating qualities of youth within *Snow*'s sentencing criteria or it did not. And defendant contends that "[t]he record established by the [sentencing] judge . . . should leave this . . . Court with the distinct impression that the trial court failed to properly consider the *Snow* factors . . . ."

Having reviewing the trial court's on-the-record justification for defendant's sentence, we readily reject this argument. As already stated, there is no requirement that a trial court resentencing a defendant to a term-of-years sentence under MCL 769.25a articulate on the record its consideration of the mitigating qualities of youth within *Snow*'s sentencing criteria. See *Boykin*, 510 Mich at 193. So, the fact that the trial court did not explicitly do so does not necessarily entitle defendant to relief. More generally, there are no magic words or phrases that a trial court must use to show that it adequately considered the mitigating qualities of youth within *Snow*'s sentencing criteria. Courts sentencing juvenile defendants to a term-of-years sentence under MCL 769.25a are required only to make a record demonstrating that the court considered the defendant's youth and treated it as a mitigating factor. See *Boykin*, 510 Mich at 193-194. Here, the record made by the trial court reflects that it did so, as will be explained in more detail later in this opinion.

While we appreciate defendant's concern that the trial court did not emphasize defendant's youth at the time he committed the offense when it addressed the *Snow* factors, we believe the reason for this is obvious—defendant was not a juvenile at the time of his resentencing, but instead had already served over 20 years in prison.[2] It follows that when the trial court was considering the *Snow* factors, it was doing so with the benefit of hindsight. For instance, when considering the "reformation of the offender," the trial court was not considering in the abstract whether this defendant had a greater possibility for reform due to his youth, see *id*. at 189, but whether defendant had actually demonstrated the capacity for reform. Likewise, when considering the "protection of society," the trial court was not considering in the abstract whether defendant had a heightened capacity to change relative to adults, see *id*., but whether defendant had demonstrated the capacity to change or whether he had in fact changed and was no longer a threat to society.[3] Consideration of the *Snow* factors in this way was not improper because the principle of proportionality requires sentencing courts to tailor their sentences to each defendant's individual circumstances. See, e.g., *People v Wines*, 323 Mich App 343, 356; 916 NW2d 855 (2018), rev'd in part on other grounds 506 Mich 954 (2020) ("Lastly, we note that because defendant has been incarcerated for over 20 years, there was information available to evaluate defendant's rehabilitation, and not merely his potential for rehabilitation. Consideration of defendant's postsentencing conduct and state of mind is also consistent with the rule that at resentencing, a trial court may consider the defendant's conduct since his original sentencing."). In so doing, the trial court did not ignore the fact that defendant was a juvenile at the time he committed the charged offense; the trial court made a record explaining how it considered defendant's youth and treated it as a mitigating factor when

---

[2] While nothing required the trial court to articulate on the record how it considered the *Snow* factors, the court chose to do so anyway. For the reformation of the defendant, the court considered it a mitigating factor to "some degree" because there was conflicting evidence about defendant's rehabilitation since he had been in prison. When considering the protection of society, the court treated the factor as neutral, reasoning that defendant did not pose a significant risk to society if released, but the court would not "say risk free." For the discipline-of-defendant consideration, the court noted that a term-of-years sentence was a reprieve from more severe sentences defendant potentially faced, like "nonparolable life." Still, due to the somewhat nebulous nature of this consideration, the court concluded that it favored defendant, albeit only slightly. The court did not explicitly address the final *Snow* factor—deterrence of others from committing like offenses.

[3] The same holds true when considering "disciplining the wrongdoer." In *Boykin*, our Supreme Court explained that a court sentencing a juvenile defendant should consider the "discipline of the wrongdoer" through the "lens" that "it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Boykin*, 510 Mich at 189 (quotation marks and citation omitted). When resentencing a defendant who has spent over 20 years in prison for an offense committed when the defendant was a juvenile, a sentencing court need not only look to the heinousness of the offense for evidence of an "irretrievably depraved character." The court can instead look at the defendant's conduct while in prison to make an informed decision about whether the conduct for which the defendant was convicted was the result of irretrievable depravity or the transient characteristics of youth.

tailoring defendant's sentence. Accordingly, we reject defendant's argument that the trial court failed to properly apply the *Snow* factors when sentencing this defendant.

## V. PROPORTIONALITY

As explained earlier, defendant raises three "issues" on appeal in which he contests the proportionality of his sentence. Before turning to the specifics of defendant's arguments, however, we acknowledge the differing approaches the parties here have taken for addressing this matter. Defendant separates his proportionality arguments into three "issues," apparently believing that each argument individually entitles him to resentencing. The prosecution, by contrast, addresses the arguments together. And the prosecution argues that defendant's sentence is presumptively proportionate, that defendant is required to show "unusual circumstances" to overcome this presumption, and that defendant has failed to do so. The prosecution may well be right, and it directs our attention to other panels who have agreed with the prosecution on the same or similar issues, albeit in unpublished opinions. We decline to wade into this area, however, because it is unnecessary for purposes of this opinion. We conclude, instead, that (1) defendant fails to establish that the two factual findings he contests on appeal were clearly erroneous and (2) defendant fails to establish that the trial court abused its discretion when it imposed a sentence "just shy of the maximum minimum" despite identifying several mitigating factors. That is, regardless of whether defendant's sentence is presumptively proportionate, defendant has not established that he is entitled to resentencing.

### A. *MILLER* FACTORS

In *Miller*, 567 US at 477-478, the United States Supreme Court identified circumstances that a trial court should consider before sentencing a juvenile defendant to life in prison without the possibility of parole. These have become known as the "*Miller* factors." Our Supreme Court identified the *Miller* factors as follows:

> (1) the juvenile's chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile's family and home environment—from which he cannot usually extricate himself—no matter how brutal or dysfunctional; (3) the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him; (4) the incompetencies of youth, which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's possibility of rehabilitation. [*Taylor*, 510 Mich at 126 (quotation marks and citation omitted).]

When a juvenile defendant is sentenced to a term of years, there is no requirement that the sentencing court consider the *Miller* factors, expressly or otherwise. *Boykin*, 510 Mich at 193-194. That said, courts sentencing juvenile defendants to a term of years have discretion to consider the *Miller* factors when fashioning an appropriate sentence, which in turn "enhances an appellate court's ability to review the proportionality" of the sentence. *Id*. at 194 n 9.

The trial court here expressly considered the *Miller* factors despite not being required to do so and placed its findings on the record. With respect to the third *Miller* factor—the circumstances of the homicide offense, including the way familial pressure may have affected the defendant—the trial court found that the factor was neutral. On appeal, defendant argues that this finding was clearly erroneous, and that the trial court should have considered this as a mitigating factor because defendant's family's financial struggles were a motivating factor in his decision to murder the victim and steal $3,000. In other words, defendant contends that the trial court clearly erred by not finding that familial pressure played a role in the circumstances of the homicide offense.

Assuming without deciding that the trial court's failure to consider this *Miller* factor as a mitigating factor would render the resulting sentence disproportionate,[4] we hold that the trial court did not clearly err when it found this factor to be "neither positive or negative." Defendant argues that the trial court should have considered the familial pressure that defendant was feeling when he murdered the victim to be a mitigating factor because defendant represented that he murdered the victim to steal the money so that he could financially help his girlfriend and his family. While there was evidence before the trial court supporting defendant's argument, there was also evidence undermining it. It was established that, of the $3,000 defendant stole, he gave only $600 to his then-girlfriend's mother, who said that she gave the money back to defendant. Other evidence was presented establishing that defendant spent the money on himself and his girlfriend. This in turn suggests that defendant did not murder the victim out of some misplaced belief that the murder would allow him to financially support his girlfriend and his family, but that he murdered the victim in a crime of opportunity to benefit himself. While the trial court did not adopt this harsh reading of the record, the simple fact that the record could support such a finding tends to establish that this factor "is arguable both ways," as the trial court explained. Accordingly, in light of this conflicting evidence, the trial court's finding that the third *Miller* factor should be given neutral weight was not clearly erroneous.

With respect to the fifth *Miller* factor—the juvenile's possibility of rehabilitation—the trial court "accord[ed] some degree of weight to the Defendant." Defendant argues that this finding was clearly erroneous because the fifth *Miller* factor *strongly* favored defendant. Assuming without deciding that the trial court's failure to consider the fifth *Miller* factor as a strongly-mitigating factor instead of a slightly-mitigating factor would render the resulting sentence disproportionate, we hold that the trial court did not clearly err when it found that this factor slightly favored defendant.

---

[4] Defendant in his brief argues that the trial court's finding was clearly erroneous, but he fails to explain why this error would entitle him to appellate relief. We are thus admittedly *assuming* that defendant is presenting a proportionality argument, but that seems like a safe assumption considering that the intent of a trial court's on-the-record articulation of the *Miller* factors in this context is to enhance appellate review of the proportionality of the resulting sentence. See *Boykin*, 510 Mich at 194 n 9. See also *Boykin*, 510 Mich at 200 (CLEMENT, J., concurring in part) (explaining that whether a defendant "is deserving of a shorter minimum sentence because of the mitigating effects of youth (i.e., that the trail court weighed the mitigating effects of youth incorrectly)" is "a proportionality issue").

Defendant raises at least two distinct arguments as to why the trial court's finding with respect to the fifth *Miller* was error. First, defendant argues that the trial court's finding with respect to the fifth *Miller* factor was clearly erroneous because, to reach its conclusion, the court relied on certain misrepresentations made by the prosecution. This argument is factually unsupported. Defendant accurately observes that the prosecution incorrectly said that the 2016 COMPAS report found that defendant still had hostility toward, and no empathy for, the victim. The trial court was plainly not misled by the misstatement, however. The court itself corrected the prosecution that the comments relied on were not from the COMPAS report but from a report prepared in 2000 when defendant first entered the prison. Defendant also accurately observes that the prosecution claimed that the COMPAS report stated that it was "probable that Defendant *includes* moral justification for his criminal behavior," while the report actually stated that the "presence of some anti-social thinking . . . *may* include moral justification for his criminal behavior." But, once again, the trial court was plainly not misled by the prosecution's misstatement. After the prosecutor made the contested statement, the trial court went back over the documents and clarified on the record what the COMPAS report said. Accordingly, there is no factual support for defendant's argument that the prosecution's misstatements affected the trial court's decision with respect to the fifth *Miller* factor.

Second, defendant more generally argues that the trial court clearly erred when it only accorded "some degree of weight" to the fifth *Miller* factor because there was "overwhelming and uncontradicted evidence" of defendant's rehabilitation. Defendant contends that the trial court placed too great an emphasis on the COMPAS report from 2016, and should have given more consideration to the Holden report from 2022. This argument does not warrant appellate relief.

Defendant's main argument in this respect is not that the COMPAS report contained false information or anything of the sort; defendant's argument is that the COMPAS report was less persuasive evidence of defendant's possible rehabilitation than the Holden report because the COMPAS report was prepared six years before the Holden report. Defendant posits that "the COMPAS assessment was stale at best where the defendant presented an up-to-date psychological evaluation that was unchallenged." Respectfully, however phrased, this argument is clearly one of weight—defendant contends that the trial court should have afforded more weight to the Holden report than the COMPAS report because the Holden report was prepared after the COMPAS report. This is certainly a reasonable argument, but the amount of weight to afford a piece of evidence lies in the factfinder's discretion. Accord *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (explaining in the context of a sufficiency-of-the-evidence claim that the factfinder is primarily entrusted to assess the weight of evidence). The trial court was plainly aware of and considered the Holden report, and to the extent that the Holden report contradicted the COMPAS report, the court was well-within its discretion to afford more weight the COMPAS report if it chose to do so.

To the extent that defendant's argument can be construed as contending that there was insufficient evidence to support the trial court's finding, we reject that argument as well. To be clear, the trial court found that this factor *favored* defendant, so the issue on appeal is one of degree—whether the trial court found that the factor favored defendant *enough*. To reach its conclusion, the trial court relied on evidence demonstrating that defendant was working towards rehabilitation, like his service work in prison and, presumably, the Holden report. The court then considered this evidence against evidence to the contrary, like statements in the 2016 COMPAS

report suggesting that defendant was still struggling with the type of thinking that led to the homicide offense. Considering the totality of the evidence that was before the trial court, we cannot conclude that the court clearly erred when it afforded "some degree of weight" to the fifth *Miller* factor.

## B. THE IMPOSED SENTENCE

For his final argument, defendant contends that the facts as found by the trial court do not support the sentence that it imposed, rendering the sentence disproportionate. More specifically, defendant argues that his sentence is disproportionate because, despite finding that several factors mitigated in defendant's favor, the court still imposed a sentence near the maximum minimum. Given the deferential standard with which this Court reviews sentencing decisions, we disagree.

As stated before, the principle of proportionality requires that every sentence be tailored to the individual defendant; the sentence imposed must be proportionate to the serious of the offense and the background of the offender. *Steanhouse*, 500 Mich at 472. A trial court need only articulate a justification for the sentence imposed in a manner sufficient to facilitate appellate review, even when resentencing a juvenile defendant to a term-of-years sentence under MCL 769.25a. *Boykin*, 510 Mich at 194. That said, a court resentencing a juvenile defendant to a term-of-years sentence under MCL 769.25a must still take into consideration the juvenile defendant's youth and treat it as a mitigating factor. *Id*. at 189.

In delivering its ruling from the bench, the trial court began by noting that it could not adequately express to the victim's family the sorrow the court felt for the loss of the victim's life. The court said that it could "spend 25 minutes talking" about the tragedy of the victim's death and it would still not be sufficient. Recognizing that belaboring the point further would not "be able to accomplish anything," the court said that it would instead focus its statements on its "rationale and it's [sic] discernment for the proper sentence."

Before reaching that rationale, however, the court made a record of why it was resentencing defendant—because defendant's previously mandated sentence of life imprisonment without the possibility of parole for a crime he committed when he was under 18 years old was deemed unconstitutional. This was because, the court explained, defendant's mandatory sentence precluded the sentencing court from considering defendant's youth. The court understood that its role in resentencing defendant was to cure this deficiency by considering defendant's youth at the time he committed the offense and treat it as a mitigating factor.

The court next acknowledged the potential range of sentences that it could impose. It noted that "nonparolable life" was not at issue, and that defendant's minimum sentence was required to be somewhere in the range of 25 to 40 years. The court believed that, to some degree, defendant's youth was accounted for in this decreased sentencing range, but it recognized that this did not relieve the court of its duty to consider defendant's youth at the time of the offense before imposing a sentence. The court said "that that's the law, and this Court will honor it."

Turning to the characteristics of defendant at the time of the homicide offense, the court recognized that defendant was only 16 years old. The court had been presented with studies about how the brain of a juvenile is not fully developed, and to explain how those studies factored into

the court's decision, it said, "If maturity or brain maturation generally follows a clock, the Defendant is accorded that level of mitigation proportionate and relative to others on either side of that age." In other words, the court recognized that it was impossible to determine how developed defendant's brain actually was when he committed the homicide offense, but it still recognized that, in general, the brain of a 16-year-old is less developed than an adult brain, and that fact mitigates in favor of defendant.

The court then turned to defendant's family and home environment at the time of the homicide offense. The court seemed to question at least some aspects of defendant's representation about why this fact should mitigate in his favor but nevertheless accepted defendant's argument. The court accordingly found that defendant's family and home environment at the time he committed the homicide offense was a mitigating factor.

Turning to the circumstances of the homicide offense, including the extent of defendant's participation and the way familial and peer pressure may have affected defendant, the court concluded that this factor was neutral. The court reasoned that the jury's verdict provided little guidance because the jury merely convicted defendant of the charged offenses; the jury was not tasked with considering whether familial or peer pressure influenced defendant. The court concluded that there was evidence supporting both that this factor was mitigating and that it was not, and accordingly gave the factor neutral weight.

When considering whether defendant might have been charged with a lesser offense, the court found that this factor was not applicable, at least in part because neither party addressed it.

The court next considered defendant's potential for rehabilitation. The court observed that there was conflicting evidence on this point, singling out the characterizations of defendant in the 2016 COMPAS report. Even so, the court concluded that this factor mitigated in defendant's favor, although only to "some degree."

Turning to the *Snow* factors, the court found that the first factor—the reformation of defendant—was the same as defendant's potential for rehabilitation. As for the protection of society, the court treated this factor as neutral; it found that defendant did not pose a significant risk to society if released, but the court would not "say risk free." Considering the discipline of defendant, the court noted that a term-of-years sentence was a reprieve from more severe sentences defendant potentially faced, like "nonparolable life." But the court also questioned "what manifest difference in discipline would one year make, one month, one day, et cetera?" That is, the court seemed to note the rather nebulous nature of this consideration. Still, the court concluded that this factor favored defendant, but only slightly.

The court next addressed more generally the variety of evidence that had been presented. The court recognized that the 2016 COMPAS report painted a somewhat troubling picture of defendant's journey to rehabilitation, and contrasted that to other evidence that was presented to the court suggesting the opposite—that defendant was an excellent candidate for rehabilitation. The court explained that it would not ignore any of the evidence and "has to square [the conflicting evidence] as best as it can." The court also considered evidence that defendant worked as a prison suicide helper.

The court then returned to discussing the "adolescence of [defendant's] brain" when he committed the offense. The court reaffirmed that it accepted the science and that it was considering this as "a facet" of its sentencing decision. The court reasoned that defendant's conduct could not be completely explained away by immaturity and an underdeveloped brain, but it reiterated that it was according weight to the fact that defendant's brain was not fully matured at the time of the offense.

After placing these considerations on the record, the court turned to the task of fashioning defendant's sentence. The court restated that it was required to sentence defendant to a 25- to 40-year minimum sentence. The court acknowledged that it was previously convinced that, due to the nature of defendant's offense, "40 years was not enough." The court explained, however, that it held this belief when the range of sentences potentially available to impose included life without parole, and that, without that "outlier" sentence available, the court was "correspondingly . . . narrow[ing] the lens" through which it was considering defendant's sentence. Following this explanation, the court sentenced defendant to 38 years and 3 months to 60 years' imprisonment with credit for the time already served.

On appeal, defendant argues that this sentence was disproportionate because the court found "several factors mitigating in favor of the defendant," made "no finding that the offense requires a most severe sentence," but still imposed "a sentence just shy of the maximum minimum."

It is true that the court found several factors mitigating in defendant's favor. But this will always be true for a defendant sentenced under MCL 769.25 or MCL 769.25a, albeit to varying degrees. Those statutes only apply to juvenile defendants, and courts *must* treat youth as a mitigating factor. *Boykin*, 510 Mich at 189. Logically, then, a sentencing court reversibly errs if it sentences a defendant under MCL 769.25a and finds *no* mitigating factors. Correspondingly, a court that finds various aspects of a defendant's youth to be mitigating factors is the expectation, not the exception. It follows that, without more, the fact that the trial court here found several aspects of defendant's youth to be mitigating factors does not suggest that the sentence imposed is disproportionate.

Next, defendant is also correct that the trial court did not emphasize the severity of defendant's crime at the resentencing hearing. But the court did reference its previous belief that "40 years was not enough." The trial court expressed that sentiment when it rejected the parties' plea deal at a 2021 hearing. At that hearing, the trial court talked extensively about defendant's conduct underlying the offense, observing that certain aspects of defendant's conduct could be explained away by defendant's youth (like the fact that defendant would have felt pressure as a 16-year-old responsible for providing for a family) while others could not (like the fact that defendant was mature enough to apologize to his manager in order to get his job back, which is how defendant was in the position to "kill[] his forgiving manager" and steal money from the safe).

A defendant's conduct underlying an offense, moreover, must always be considered by a sentencing court—the principle of proportionality requires courts to consider the circumstances of the offense before imposing a sentence. See *Steanhouse*, 500 Mich at 472. And defendant's underlying conduct here was plainly egregious. It is true, of course, that first-degree murder is always a serious crime. See, e.g., *Boykin*, 510 Mich at 184 ("On one hand, first-degree murder is

-11-

an extremely serious offense, as it recognizes that at least one person is deceased."); *Wines*, 323 Mich App at 355 ("Undoubtedly, this murder, like virtually all such crimes, was heinous, tragic, and irreversible."). But it is also true that some defendants convicted of first-degree murder are less culpable than others. For instance, a juvenile defendant pressured by older peers to act as a lookout for a robbery in which someone was killed could be convicted of first-degree murder. See, e.g., *Miller*, 567 US at 465-466. And assuming that such a defendant was sentenced to a term of years, that hypothetical juvenile defendant would be looking at the same sentencing range as defendant here—25 to 40 years. Yet the juvenile defendant who acted as a lookout is clearly less blameworthy for the resulting homicide than the instant defendant, who waited with his manager until the store was closed and they were alone, then shot her in the back of the head in order to steal money from the store's safe.[5]

This is all to explain that defendant's conduct underlying the homicide offense was grievous, and the trial court plainly took that into consideration. While the trial court did not emphasize this consideration on the record before imposing defendant's sentence, nothing required the court to do so. The trial court was only required to justify its sentence in a manner sufficient to facilitate appellate review. *Boykin*, 510 Mich at 194.

This leaves only defendant's complaint that the trial court sentenced him "just shy" of the 40-year maximum-minimum sentence. As detailed above, the trial court created a record that is more than sufficient to facilitate appellate review. See *id*. And the record created by the trial court makes it abundantly clear that the court considered defendant's youth and treated it as a mitigating factor, as it was required to do. See *id*. at 189. The record also amply demonstrates that the trial court gave serious consideration to the evidence before it and the parties' arguments based on that evidence. While it is true that defendant's sentence is on the high-end of his minimum-sentence range, the abuse-of-discretion standard recognizes that there is no single correct outcome, but a range of reasonable and principled outcomes. See *Babcock*, 469 Mich at 269. With this in mind, and in light of the trial court's extensive discussion about what it considered before imposing the sentence, particularly its explicit consideration of defendant's youth as a mitigating factor, we conclude that the trial court did not abuse its discretion by imposing a minimum sentence of 38 years and 3 months based on the record before it.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Stephen L. Borrello
/s/ Noah P. Hood

---

[5] To be clear, we are not implying that courts sentencing juvenile defendants to a term-of-years sentence should reserve the minimum 25-year sentence for only the least culpable juvenile defendants. We are merely acknowledging the broad range of conduct that MCL 769.25a's 25- to 40-year range captures, and the corresponding difficulty that sentencing courts have of trying to decipher where an individual defendant's sentence should fall within that range of sentences.