*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 26, 2026
3:04 PM

Plaintiff-Appellee,

v

No. 371333
Oakland Circuit Court
LC No. 2023-284859-FH

CHRISTOPHER TRACY CRAFT,

Defendant-Appellant.

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d) (sexual penetration of a victim who is related by blood or affinity to the third degree). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment. We affirm.

## I. FACTS

This case arises out of a sexual encounter between defendant and his adult daughter, AR.[1] Defendant was never married to AR's mother, and AR's paternity was not definitively established until the events of this case. Defendant was largely absent in AR's life when she was growing up. In 2019, defendant and AR began to reconnect and establish a father-daughter relationship. They spent time together, and AR referred to defendant as "dad."

In March 2023, AR picked up defendant in her car and drove him to his mother's house to drop off her children. AR did not intend to spend the evening with defendant, but they proceeded to run errands together. AR had consumed two canned cocktails before picking up defendant. At a liquor store, AR purchased a half-pint bottle of vodka, and defendant purchased beer. Next, AR drove defendant to the apartment of his childhood friend, Willie Mabin. Mabin's girlfriend, Jocinda Parker, also was at the apartment, along with other family friends. Parker testified that AR was "very drunk," and she eventually

---

[1] Although the complainant in this case is an adult, we will use her initials to protect her privacy.

passed out on the couch in Mabin's apartment. At some point during the night, AR woke up and felt defendant having sex with her from behind. She attempted to push him off, and then she laid back down and blacked out. When she woke up a second time, AR panicked, got into her car, and drove to a friend's house. AR gave defendant a ride later that morning, and he told AR he was sorry. AR, who was screaming and crying, told defendant he was "sick," and that he betrayed her.

Later that morning, AR drove to the hospital. While at the hospital, AR called Lisa Vanston, a former romantic partner of defendant's. According to Vanston, in June or July 2022, defendant had confessed to Vanston that he was developing sexual feelings for AR and said that he would have sex with AR if given the chance even though she was his daughter. Vanston told AR about this conversation, but AR thought that Vanston was jealous of her relationship with defendant and was trying to get between them. However, after the assault, AR called Vanston from the hospital and warned Vanston not to let defendant around Vanston's daughter because he had just raped her.

A deputy from the Oakland County Sheriff's Office drove AR to HAVEN for a medical examination later that morning. Kim Olson, the registered nurse and forensic nurse examiner at HAVEN who performed AR's examination, said that she performed a "head to toe" examination, where the primary purpose was medical diagnosis and treatment, but she also did forensic collection as a courtesy. Olson testified that AR told her during the examination that she had been sexually assaulted by her biological father. Olson also took swabs from AR for further DNA testing.

The swabs provided by AR were compared with the DNA sample defendant voluntarily provided. Subsequent forensic analysis provided "very strong support" that defendant's DNA was present in the sample collected from AR's labia majora. Additionally, a DNA analysis provided "very strong evidence" that defendant was AR's biological father.

Defendant was charged with one count of CSC-III (affinity) in violation of 750.520d(1)(d) and convicted by jury after a two-day trial. Defendant was sentenced as noted above. This appeal followed.

## II. *MENS REA* AND CRIMINAL SEXUAL CONDUCT

Defendant first argues that statute under which he was convicted, MCL 750.520d(1)(d), is unconstitutional because it does not require proof of *mens rea*, in violation of his due-process rights. We disagree.

As an initial matter, because defendant did not raise his constitutional challenge with the trial court, the issue is unpreserved. However, we may review the constitutionality of a statute even if the issue is unpreserved. *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). Ordinarily, we review constitutional issues and questions of statutory interpretation de novo. *Id*. "However, we review unpreserved constitutional issues for plain error affecting the defendant's substantial rights." *Id*.

To establish that a claim of error warrants reversal under the plain-error standard, the following four elements must be met:

> First, there must have been an error. Deviation from a legal rule is error unless the rule has been waived. Second, the error must be plain, meaning clear or obvious. Third, the error must have affected substantial rights. This generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. The defendant bears

the burden of establishing prejudice. Fourth, if the first three requirements are met, reversal is only warranted if the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings. [*People v Shafier*, 483 Mich 205, 219-220; 768 NW2d 305 (2009) (quotation marks and citations omitted).]

MCL 750.520d states, in relevant part:

> (1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:
>
> * * *
>
> (d) That other person is related to the actor by blood or affinity to the third degree and the sexual penetration occurs under circumstances not otherwise prohibited by this chapter. . . .

In general, strict-liability offenses are disfavored. *People v Tadgerson*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165678); slip op at 7. "Courts will infer an element of criminal intent when an offense is silent regarding *mens rea* unless the statute contains an express or implied indication that the legislative body intended that strict criminal liability be imposed." *Id.* (cleaned up). "[T]here is a presumption that unless otherwise stated in a statute, a Legislature intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *Id.* at ___; slip op at 8 (quotation marks and citations omitted).

This Court previously analyzed the argument presented by defendant in the context of a conviction of fourth-degree criminal sexual conduct (CSC-IV) based on affinity in *People v Russell*, 266 Mich App 307, 315; 703 NW2d 107 (2005). In *Russell*, the defendant was convicted of CSC-IV in violation of MCL 750.520e(1)(d), which essentially is similar to MCL 750.520d(1)(d) except that it prohibits "sexual contact" instead of "sexual penetration." The defendant in *Russell* argued that "a violation of MCL 750.520e(1)(d) is an unconstitutional strict liability crime because it requires no *mens rea*." *Russell*, 266 Mich App at 315. This Court rejected that argument, holding that "criminal sexual conduct is a general intent crime . . . ." *Id.* Thus, under MCL 750.520e(1)(d), "the prosecutor must prove that the defendant had sexual contact with the complainant." *Id.* See also *People v Corbiere*, 220 Mich App 260, 266; 559 NW2d 666 (1996) ("[T]hird-degree criminal sexual conduct is a general intent crime proved by showing that the defendant committed a proscribed sexual act."). In other words, "[n]o intent is requisite other than that evidenced by the doing of the acts constituting the offense." *People v Sabin*, 463 Mich 43, 68-69; 614 NW2d 888 (2000).[2]

---

[2] "[T]he distinction between a strict-liability crime and a general-intent crime is that, for a general-intent crime, the people must prove that the defendant purposefully or voluntarily performed the wrongful act, whereas, for a strict-liability crime, the people merely need to prove that the defendant performed the wrongful act, irrespective of whether he intended to perform it." *People v Lardie*, 452 Mich 231, 241;

In the instant case, defendant argues that the criminal prohibition against sexual penetration between family members in MCL 750.520d(1)(d) is unconstitutional because it is a strict-liability crime. However, as explained, Michigan caselaw holds that CSC-III is a general-intent crime. *Corbiere*, 220 Mich App at 266. Moreover, with respect to affinity, this Court has rejected the argument that criminal sexual conduct based on affinity is a strict-liability crime. *Russell*, 266 Mich App at 315. Therefore, the trial court did not commit any error, much less plain error, by failing to conclude that MCL 750.520d(1)(d) is unconstitutional because it creates a strict-liability crime.[3]

## III. FORENSIC NURSE EXAMINER'S TESTIMONY

Next, defendant argues that the trial court erred in allowing Olson, the forensic nurse examiner, to repeat AR's claim that she made during the examination that she was sexually assaulted by her father because this was hearsay. He also argues that his counsel was ineffective for failing to object to the testimony. We agree that AR's statement at issue was inadmissible hearsay but, because it was cumulative of other properly admitted testimony, defendant is not entitled to relief on this basis.

As this evidentiary objection is unpreserved, "the defendant must show a plain error that affected substantial rights." *People v Girard*, 269 Mich App 15, 19; 709 NW2d 229 (2005) (cleaned up). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A trial court's findings of fact are reviewed for clear error, while we review questions of constitutional law de novo. *Id.* When a claim of ineffective assistance of counsel is unpreserved, our review is limited to errors apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

In general, out-of-court statements used to prove the truth of the matter asserted are not admissible. MRE 801(c); MRE 802.[4] However, hearsay may be admissible when it falls within one of the exceptions in the Michigan Rules of Evidence. MRE 802.

---

551 NW2d 656 (1996), overruled in part on other grounds by *People v Schaefer*, 473 Mich 418; 703 NW2d 774 (2005). Thus, CSC-III is not a strict-liability crime because, at least when in dispute, the prosecution must prove that the defendant purposefully or voluntarily engaged in sexual penetration. In other words, as the prosecution correctly notes on appeal, "the *mens rea* was the intent to engage in sexual penetration."

[3] Defendant summarily suggests that MCL 750.520d(1)(d) also is unconstitutional because it precludes the defense of consent. However, defendant does not elaborate upon this suggestion with any argument, so we need not address it. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Regardless, we briefly note that laws such as MCL 750.520d(1)(d) are commonplace and accepted across the country. See *People v McEvoy*, 215 Cal App 4th 431, 442; 154 Cal Rptr 3d 914 (2013) ("All but three states criminalize some forms of consensual adult incest. Every state that does so criminalizes at least incest between parents and their children.") (quotation marks and citation omitted).

[4] The Michigan Rules of Evidence were substantially amended effective April 11, 2024, shortly after the instant trial occurred. We cite the rules of evidence in effect at the time of trial, although the amendments are irrelevant for the purposes of our analysis.

"Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment" are admissible as an exception to the hearsay rule. [*People v Garland*, 286 Mich App 1, 8; 777 NW2d 732 (2009), quoting MRE 803(4).]

The admission of hearsay under MRE 803(4) in this context is permissible because (1) the statements are reasonably necessary to the diagnosis and treatment of the patient, and (2) the declarant has a motivation to tell the truth to receive proper medical care and treatment. *Garland*, 286 Mich App at 8-9.

In *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011), this Court held that statements made by the victim of a sexual assault to a nurse performing a sexual assault examination generally are admissible, explaining that MRE 803(4) allows for the admission of hearsay testimony in connection with a medical examination "irrespective of whether the declarant sustained any immediately apparent physical injury." However, this Court has held that MRE 803(4) does not apply when the medical examination occurs long after the last alleged instance of abuse and when the purpose of the examination is not diagnosis and treatment but rather investigation. See *People v Shaw*, 315 Mich App 668, 675; 892 NW2d 15 (2016). Moreover, identification of a victim's assailant is not admissible under MRE 803(4) unless it is shown to be sufficiently trustworthy and also reasonably necessary for diagnosis and treatment. *People v Meeboer (After Remand)*, 439 Mich 310, 322-330; 484 NW2d 621 (1992); *People v LaLone*, 432 Mich 103, 110; 437 NW2d 611 (1989).

In the present case, defendant argues that the trial court erred when it permitted Olson to testify about what AR told her during the medical examination, particularly that "she had been sexually assaulted by her biological father." It is not apparent from the record in this case that this identification was reasonably necessary to AR's diagnosis and treatment such that it would be admissible under MRE 803(4). Arguably, therefore, admission of the identification testimony was plainly erroneous.[5]

Regardless, even if the admission of the identification testimony is plainly erroneous, it does not require reversal in the instant case. "[T]he admission of a hearsay statement that is cumulative to in-court testimony by the declarant can be harmless error, particularly when corroborated by other evidence." *People v Gursky*, 486 Mich 596, 620; 786 NW2d 579 (2010). Here, identity was not a disputed issue. Olson's testimony regarding AR's out-of-court statement was cumulative of AR's in-court testimony that she woke up to defendant having sex with her and told him to stop. Additionally, Parker testified that she saw defendant having sex with AR, and the DNA analysis provided "very strong support" that defendant's DNA was present in a sample collected from AR's labia majora. And while defendant denied vaginally penetrating AR, he admitted that "[s]omething sexual did happen" between them. Consequently, although Olson's testimony regarding AR's identification of defendant during her medical examination was

---

[5] Defendant also suggests that Olson's testimony about other aspects of the examination constituted inadmissible hearsay as well. However, we find nothing violative of MRE 803(4) in this regard, and it is apparent that his overarching issue here involves the identification. Further, to the extent that defendant suggests that the purpose of the examination was not medical in nature, the record clearly shows otherwise. See *Shaw*, 315 Mich App at 675.

admitted in error, the evidence was cumulative of other testimony at trial, and it does not require reversal because the error was not prejudicial.

Relatedly, defendant argues that his trial counsel was ineffective for failing to object to Olson's inadmissible hearsay testimony during trial. To show ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

As noted above, AR's identification of defendant as the perpetrator was not necessary for the medical examination, and it was therefore inadmissible under MRE 803(4). Counsel did not object to this testimony or the admission of Olson's report, which also contained the identification. Assuming that counsel's failure to object to the inadmissible hearsay identification of defendant as the perpetrator of sexual assault was objectively unreasonable, defendant is not entitled to relief because there was no prejudice resulting from this ineffective assistance. As explained, the identification evidence against defendant was overwhelming. As such, any possible error resulting from Olson's testimony that AR said she was sexually assaulted by her biological father was not reasonably probable to have affected the outcome of the case.

## IV. PROSECUTORIAL ERROR[6]

Finally, defendant argues that the prosecutor committed error when eliciting irrelevant and highly prejudicial information from defendant's former partner, Vanston, or alternatively, that trial counsel was ineffective for failing to object to this testimony.[7] Because defendant has not established that the prosecution committed error, or that defendant's trial counsel's decision not to call the jury's attention to the allegedly inflammatory comments made in response to his own questioning was unreasonable, we disagree that defendant is entitled to relief on these grounds.

---

[6] "[A]lthough the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are 'better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (citation omitted).

[7] Specifically, defendant argues that "[t]he interjection into this trial of allegations that Appellant was violent and that [Vanston] had warned AR abut [sic] him was inflammatory and prejudicial." Defendant directs our attention to the following exchange between trial counsel and Vanston on cross-examination:

> Q: And so you'd describe that as a good or bad relationship?
>
> A: It was an awful relationship.
>
> Q: Okay. You had some reason not to like Mr. Craft?
>
> A: He was violent.

Because the claim of prosecutorial error was not raised at trial, it is not preserved, so it is reviewed for plain error affecting substantial rights. *People v Bailey*, 310 Mich App 703, 721; 873 NW2d 855 (2015). Likewise, because the corresponding claim of ineffective assistance of counsel also was not preserved, our review is limited to errors apparent on the record. *Unger*, 278 Mich App at 253.

The prosecutor's role is to seek justice and not merely obtain convictions. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Accordingly, "[t]he test for prosecutorial error is whether the defendant was denied a fair trial." *People v Thurmond*, 348 Mich App 715, 736; 20 NW3d 311 (2023). Allegations of prosecutorial error "are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Dobek*, 274 Mich App at 64.

A defendant may be denied a fair trial when the prosecution "interjects issues broader than the defendant's guilt or innocence" into the proceedings. *Id*. at 63-64. However, it is not error for a prosecutor to make good-faith efforts to introduce evidence. *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). Consequently, a claim of prosecutorial error predicated upon the introduction of irrelevant testimony must be based on an allegation that the prosecutor did not act in good faith when seeking to admit the evidence. See *People v Allen*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 352625); slip op at 8.

Here, as to Vanston's testimony that she had an "awful" relationship with defendant and that defendant was "violent," the prosecution correctly points out that this testimony was elicited during defendant's trial counsel's own cross-examination of Vanston. When it became clear that defendant's trial counsel intended to explore this topic, apparently to undermine the credibility of her testimony against defendant, the prosecution asked to approach the bench, the parties conferred with the trial court, and then trial counsel changed the subject when he resumed his cross-examination. Consequently, defendant has not demonstrated that the prosecution committed any error because it was his own lawyer who elicited the allegedly damaging testimony.

Moreover, as to Vanston's testimony that she had warned AR about her conversation with defendant in June or July 2022, the prosecution reasonably elicited that testimony to show that defendant had previously expressed sexual feelings for AR and that Vanston believed that AR should be aware of this fact. Because this case involved a CSC-III charge based on affinity, Vanston's testimony in this regard was relevant to explain the overall circumstances of the relationship between defendant and AR, including what each of those two parties understood that relationship to be. See MRE 401 and 402. There was nothing erroneous or improper about the prosecution eliciting this testimony.

Defendant further argues that his attorney was ineffective for failing to object to Vanston's allegedly irrelevant and prejudicial testimony. We disagree. As to the elicitation of testimony that defendant was "violent" with Vanston and that those two individuals had an "awful" relationship, that testimony was somewhat nonresponsive to the questions defense trial counsel asked. For example, trial counsel asked Vanston whether she had a reason not to like defendant, and instead of answering "yes" or "no" as the question called for, she responded, "He was violent." Trial counsel and Vanston had a similarly brief exchange as to her reference that she had an "awful" relationship with defendant. Although trial counsel could have objected to that testimony as nonresponsive and asked the trial court to instruct the jury to disregard it, doing so would have potentially highlighted the statements for the jury. "Certainly there are times when it is better not to object and draw attention to an improper comment." *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). It was not objectively unreasonable for trial

counsel to allow Vanston's somewhat nonresponsive answers to his own questions to stand rather than object to the testimony and risk drawing the jury's attention to it.

Finally, as to the prosecution eliciting testimony from Vanston about the June or July 2022 conversation with defendant, we cannot readily identify a basis on which any objection from trial counsel would have been successful. Thus, we cannot conclude that trial counsel was ineffective for failing to object. See *Trakhtenberg*, 493 Mich at 51-52.

In any event, as explained earlier, the evidence against defendant was overwhelming. Defendant agreed while testifying that "[s]omething sexual did happen" with him and AR, and his DNA was present in a sample collected from AR's labia majora. Moreover, AR testified that defendant had sex with her and, to that extent, her testimony was not contradicted. In light of these facts, as well as the straightforward elements of CSC-III under MCL 750.520d(1)(d), any possible error about such incidental issues as Vanston's prior relationship with defendant, or her June or July 2022 conversation with defendant, was not prejudicial.

## V. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani